## EX PARTE TOM WHITE.

### *No. 996.    Decided November 28.*

1. **Local Option Election—Voting Precincts Embracing City Wards.**—Where the validity of a local option election was contested upon the ground that the County Commissioners Court in laying off the voting precincts for the same, embraced within four precincts the city of H., which had theretofore been divided into four voting wards, thereby totally ignoring the said city wards, in contravention of the provisions of article 1664, Revised Statutes, *Held*, the law in reference to voting precincts, prescribing the duty of the Commissioners Court in regard thereto, fails to declare that a noncompliance therewith will invalidate the election as to those precincts, and that the law having failed to make the observance of the city wards, in the laying out of

such voting precincts, an essential prerequisite to the validity of such election, the court would not make it so, there being no suggestion of fraud or wrong on the part of the Commissioners Court or any one else.    Following Davis v. The State, 75 Texas, 420.

2.    Same—Constitutional Law.—In 1885 the Commissioners Court of Hill County established the four election precincts, which took in the city of Hillsboro, without reference to the established wards of the city, and the voting boxes used for the precincts were in the northwest, southwest, and northeast corners of the court house, said court house being in no one of said precincts, but common territory to three of them; the other precinct (number 1) by mistake stopping short at the court house yard, some sixty feet from the room subsequently used as its voting place.    After the precincts were thus laid off and voting boxes thus established, all elections had been held in conformity therewith without objection, prior to the one in question.    At this election the same rooms were voted in, except the southwest room, which had been assigned to, or occupied by, precinct number 2.    The voters of this precinct cast their votes in a room on the same side of the building, but across a hallway, and thirty feet distant from the one customarily used by them, and adjoining the voting room for precinct number 3.    It was objected that the election was void, because in contravention of section 2, article 6, of the Constitution, which provides, that "all electors shall vote in the precinct of their residence."    *Held*, the objection is not maintainable.

1.    The object of the constitutional provision is to insure a fair and honest election, by requiring each voter to cast his ballot at the same place where his neighbors voted, and those to whom his qualifications were best known, and by whom, if necessary, he could be challenged.

2.    The voters in precinct number 1, though by mistake it did not embrace any portion of the court house, had honestly used the room, for years, therein assigned to them for election purposes, supposing it to be their true and legal place of voting; and thus brought their action within the exception to the general rule, that it is essential to the validity of an election that it be held at a time and in the place provided by law.

3.    As to the polling room of precinct number 2 being changed from its usual and assigned room across the hallway of the court house to another room, *Held*, that the room used was practically the same place.    The change could in no possible way have affected the election, and there was no improper motive suggested in making the change.

3.    Elections—Disfranchisement of Voters.—In order to invalidate an election, on account of the fact that voters were disfranchised because the territory occupied by them was not embraced in any election precinct, *Held*, that the number so disfranchised must bear such relation to the number actually voting as would suggest a probability that their participation in the election might in some way have affected the result.

4.    Same—Duty of Courts with Reference to.—Where the sovereign will, as expressed at an election, is fair, free from taint of fraud or charge of improper conduct, it becomes the duty of courts to sustain them, if it can be done, by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to law.

APPEAL from the County Court of Hill.    Tried below before Hon. W. P. CUNNINGHAM, County Judge.

The case is stated fully in the opinion.

*Smith & Wear, Tarlton & Morrow, S. C. Upshaw,* and *McKinnon & Carlton,* for relator.—The city of Hillsboro being an incorporated city divided into wards, and within the limits of Justice Precinct No. 1, the Commissioners Court should have designated the wards thereof as

election precincts; and their failure so to do rendered said election null when attacked in a direct proceeding.

The facts are as follows: Prior to the entry of said order mentioned in subdivision 1 above set out, Justice Precinct No. 1 had been by the proper authorities divided into the following voting precincts, seven in number, viz: Hillsboro No. 1, Hillsboro No. 2, Hillsboro No. 3, Hillsboro No. 4, Woodbury No. 2, Peoria No. 3, and Vaughan No. 32. Hillsboro is an incorporated city, and has been divided into four wards, numbers 1, 2, 3, and 4, and was so at and before the date of said election, and the court house is situated in city ward number 3.

There were polled at Hillsboro boxes numbers 1, 2, 3, and 4 a total vote of 1362, about one-half of which were cast by voters living outside of the corporate limits of the city of Hillsboro. The total vote cast in all of said precincts in Justice Precinct No. 1 was 1762. The Hillsboro voting precincts 1, 2, 3, and 4 included city wards 1, 2, 3, and 4, with the lines of each voting precinct extending into and including a part of the territory adjacent to each city ward lying in Justice Precinct No. 1, not included in any of city wards defined by the city ordinance.

It was admitted on the trial of the case "that the city of Hillsboro was in Justice Precinct No. 1, Hill County, Texas; that it was duly and legally incorporated; that its limits extended a mile each way from the centre of the court house; that it was such at the time the election was ordered, and was so incorporated in 1882 and 1885." It was shown that the voting precincts were laid out without reference to the city wards; that some of the four Hillsboro voting precincts contained parts of more than one city ward. Further, each of the Hillsboro voting precincts extended beyond the limits of the city of Hillsboro and included parts of the surrounding country, and one-half the voters resided outside the corporate limits of the city. Sayles' Civ. Stats., arts. 1663a, 1666; Acts 21st Leg., p. 10; Davis v. The State, 75 Texas, 420; Bell v. Faulkner, 84 Texas, 187.

The city of Hillsboro being divided into four wards, and the election for the four Hillsboro voting precincts being held in ward 3, and the voters residing in the other three wards having voted in ward 3, the election is a nullity. Const., art. 6, sec. 2; Sayles' Civ. Stats., art. 1689; Wilson's Crim. Stats., art. 165, et seq.

· The votes cast in Hillsboro voting boxes were all cast at the court house in Hillsboro, and said court house is not situated within any voting precinct designated by the Commissioners Court; but was in fact excluded from all said voting precincts. The court therefore erred in concluding as a matter of law said election was valid.

The facts show, that the territory now embraced in the precincts, Hillsboro No. 1, Hillsboro No. 2, Hillsboro No. 3, and Hillsboro No. 4, was originally one voting precinct, and that same was called number

1, and the voting box for said precinct number 1 was in the court house. That in dividing same into four voting precincts, the commissioners intended to divide same into four quarters, with the court house as the centre; but in laying same out as a fact they called to begin at the corner of the court yard, instead of in the court house, and that as a fact the court house was not included within the lines of any of the voting precincts, but was entirely excluded from all of them, the court yard fence being about fifty-eight feet from the court house. Const., art. 6, sec. 2; Sayles' Civ. Stats., art. 1689; Hunnicutt v. The State, 75 Texas, 239; The State v. Nicholson, 102 N. C., 465; Cowan v. Prowse, 19 So. W. Rep., 411; Kemp v. Owens (Md.), 24 Atl. Rep., 606.

It is essential to the validity of an election that a time and a place of holding the election be fixed by the authorities charged with that duty.

The election was ordered to be held at the regular voting places in Justice Precinct No. 1, but there were no orders of record of the Commissioners Court showing that they had established any voting place within the four voting precincts, designated as Hillsboro Nos. 1, 2, 3, and 4.

It was shown by the testimony of witnesses Abney and Cunningham, who had held the office of county judge during the time since 1888, that there had not been any order establishing voting places at Hillsboro. It was shown, and the court found, that since 1885 the voters at Hillsboro had voted at the court house, one box in each of its four corners, except during the years when the court house was torn down; that the voters of Hillsboro voting at box number 2 had been voting since 1885, with the said exception, in the county clerk's office, which is in the southwest corner of the court house; but at this election the voters in said voting box voted in the County Court room, which is across the hall and some thirty feet from the county clerk's office, and that but one other election had been held in said County Court room. Sayles' Civ. Stats., art. 1666; McKinney v. O'Conner, 26 Texas, 5; Davis v. The State, 75 Texas, 420; Fowler v. The State, 68 Texas, 35; Boone v. The State, 10 Texas Crim. App., 418.

There is an important distinction between the facts on which the court passed in the case of Davis v. The State, and those in this case. In that case the Commissioners Court had distinctly designated the time and place of holding the election. In that case the court says, that it is the essence of a fair election that a time should be fixed and a place appointed where each qualified voter may cast his ballot. There is another reason for holding this election illegal, which did not occur in the Davis case. This reason will more distinctly appear later, but we mention it now. In that case, all the votes were cast within the voting precincts designated by the Commissioners Court. In this case, 1362 votes were cast at places which were not in any of

the voting precincts as designated by the Commissioners Court. It is also to be noted that in the Davis case a general election was involved, and in this case the election in question was one which had for its purpose the putting in force of a penal law. All the authorities are to the effect that in a special election the law must be strictly complied with. Ex Parte Kennedy, 23 Texas Crim. App., 81.

There were 1762 votes cast, of which 1362 were cast at Hillsboro, and all the votes cast at Hillsboro were cast without the lines of the several voting precincts in which the voters resided. It was shown that no place had been previously designated where these voters could legally deposit their ballots.

The constitutional amendment of 1891 provides that the question as to whether or not the sale of intoxicating liquors shall be prohibited within prescribed limits should be determined by a majority vote of the qualified voters residing within said limits. Before this question can be said to be determined, it must be shown that the one side or the other of the question has received the required majority; and where, as in this case, it is shown that out of the 1762 qualified voters 1362, without fault on their part, cast illegal ballots, it can not be said that the result of the 400 ballots legally cast determined the election in the manner required by the Constitution. Acts 22nd Leg., p. 196; Prestwood v. Barland (Ala.), 9 South. Rep., 223; Perry v. Whittaker, 71 N. C., 475; The People v. Canady, 73 N. C. 198; McDonald v. Rutherford County, 2 So. E. Rep., 351; The City of Fort Worth v. Davis, 57 Texas, 225.

After the creation in 1889 of Justice Precinct No. 3, there was left of the Massey voting precinct about 1500 acres of land in Justice Precinct No. 1, upon which resided several legal voters. This territory was never annexed to any other voting precinct, nor was the same made a voting precinct, nor any place designated at which the voters residing in same could vote.

The court erred in holding said election valid, because by reason of a failure of the Commissioners Court of Hill County, Texas, to attach that portion of the Massey voting precinct not cut off and included in Justice Precinct No. 3 that still remained in Justice Precinct No. 1, Hill County, to any election or voting precinct in Justice Precinct No. 1, or to designate a place in said territory for voters therein to vote, and by reason of the failure of said Commissioners Court to create a voting or election precinct embracing said territory, the voters therein had no place in law to vote, and were thereby in law deprived of their rights and privileges of voting in said local option election that is now contested. Const., art. 6, sec. 2; Sayles' Civ. Stats., art. 1663a; Ex Parte Kennedy, 23 Texas Crim. App., 77; Cool. Const. Lim., art. 776.

This brief was ably supported by elaborate arguments, one filed by Messrs. McKinnon & Carlton, and another by Messrs. Tarlton & Mor-

row, which we regret that want of space will not permit us to report in full.

*R. L. Henry,* Assistant Attorney-General, and *Vaughan & Jones,* for respondent.—The order of the Commissioners Court ordering the local option election of January 18, 1894, included all of the territory of Justice Precinct No. 1, Hill County, Texas, by field notes, and the election held by virtue of said order was valid.  Acts 23rd Leg., p. 48; Ex Parte Kennedy, 23 Texas Crim. App., 77; Ex Parte Segar, 32 Texas Crim. Rep., 553.

The mere failure of the Commissioners Court to establish a voting box for the voters residing in that portion of the Massey voting precinct, not included in Justice Precinct No. 3, that was left in Justice Precinct No. 1, did not render the election void, as there was not a sufficient number of voters residing in said territory to have changed the result of said election, had they all voted against prohibition at said election; and because said voters residing in said territory had an opportunity to vote, and did vote, at the usual place where they had been in the habit of voting prior to said election, they were not deprived of their right of suffrage at said election, and the court did not err in holding said election valid.  Acts 23rd Leg., p. 48; McKinney v. O'Connor, 26 Texas, 5; Ex Parte Segar, 32 Texas Crim. Rep., 553.

The failure to establish a voting precinct in any part of the territory, or the failure to provide for a certain part of the people of the district to participate in the election, will not vitiate the election unless the result of the election was thereby affected and rendered doubtful.  Acts 23rd Leg., p. 51, art. 3239a; McCraw v. Haralson, 4 Coldw. (Tenn.), 34.

The fact that the Commissioners Court failed to establish as election precincts the four wards of the city of Hillsboro as voting precincts will not invalidate an election that in all other respects is legal, where it is not shown that the Commissioners Court acted fraudulently in not establishing as election precincts said wards.  26 Texas, 5, supra; Fowler v. The State, 68 Texas, 30; Ex Parte Segar, 32 Texas Crim. Rep., 553; Davis v. The State, 75 Texas, 420; Bell v. Faulkner, 84 Texas, 184.

The failure of the Commissioners Court to establish as voting precincts the four wards of the city of Hillsboro will not render the election void in the absence of fraud on the part of said court in failing to establish said wards as voting precincts; and where it is shown that a fair expression of the will of the majority was obtained at said election, and that no one who was a qualified voter was denied the right of suffrage thereby, a time and place having been designated for the holding of said election, as required by law.

The fact that the voting boxes provided for Hillsboro precincts numbers 1, 2, 3, and 4 were not actually within their respective voting precinct lines (having been placed a few yards outside of the lines of

said precincts through mistake of fact), and all parties participating in said election believing that said voting boxes were in their proper place, will not vitiate the election, which in all other respects was fairly held, and a fair expression of the will of the majority obtained; and it not being shown that by such irregularity a sufficient number of legal voters were denied the right of suffrage, that had they voted in said election against local option the result of said election would have been changed; and in fact it being shown that by such irregularity no one a legal voter was denied the right to vote at said election, or was prevented from voting at said election by such irregularity. The precise position of the ballot box is immaterial, and unless that position affects the result it will not vitiate the election. McKinney v. O'Connor, 26 Texas, 5; 64 Texas, 500; 63 Texas, 390; 63 Texas, 261; Davis v. The State, 75 Texas, 420; Bell v. Faulkner, 84 Texas, 187; Ex Parte Segars, 32 Texas Crim. Rep., 553; Wheeler v. Wheeler, 76 Texas, 489; Fowler v. The State, 68 Texas, 30. See especially Tullo v. Lowe, 12 So. W. Rep., 511; Augustine v. Eggleston, 12 La. Ann., 366; Munic v. Schenly, 1 La. Ann., 387; 6 Am. and Eng. Encyc. of Law, 332.

When there has been a custom acquiesced in for years to hold the election at a place different from the one fixed by law, and the people suppose that the place where it was held was the correct one, the mistake will not avoid the election.

The voting precincts in Hillsboro were established in 1885, and the ballot boxes were placed without the territorial limits of the precincts by mistake. The record shows that no one knew that either box was not in its proper position. That was acquiesced in until 1894. 6 Am. and Eng. Encyc. of Law, 323, note 3.

These gentlemen, in an argument in support of their brief, cited the following authorities in addition to those cited in their brief. Steel v. Calhoun, 61 Miss., 556; Dale v. Irwin, 78 Ill., 170; Prescott v. Culberson, 58 Cal., 198; Wakefield v. Patterson, 25 Kan., 709; Delano v. Morgan, 3rd Cong. Election Cases, 168; Trueheart v. Addix, 2 Texas, 218.

SIMKINS, JUDGE.—At a local option election held on the 18th of January, A. D. 1894, in Justice Precinct No. 1, Hill County, Texas, which embraces the town of Hillsboro, local option was carried by a majority of eighty-five votes, and the notice of the result was duly published as required by law. Relator was afterwards arrested for selling intoxicating liquor in violation of said law, and thereupon sued out a writ of habeas corpus, alleging the law to be illegally adopted, for reasons stated in his petition. Upon a hearing the county judge overruled the prayer of petitioner and remanded him to the custody of the sheriff, and an appeal was taken to this court.

It is admitted in the statement of facts that relator sold intoxicating liquor at the time and place as charged, and that the sole question to

be determined on this appeal is whether the local option law has been legally adopted in said precinct number 1 of Hill County. If so, the relator was properly remanded to the custody of the sheriff; and if otherwise, should be discharged. It is insisted that the law is invalid, because Hillsboro is an incorporated town, divided into four wards; yet the County Commissioners Court, with full knowledge of that fact, divided the Hillsboro voting precinct (which embraced not only the town itself but considerable territory lying adjacent thereto) into four voting precincts regardless of the ward divisions; and in fact each voting precinct contained parts of several wards.

There is no question that it is the duty of the county commissioners in laying out or dividing an election precinct, which contains a town or city, into voting precincts, to recognize and designate the several wards as such voting precincts (Revised Statutes, article 1664), and when required for public convenience may subdivide each ward into as many voting precincts as they may deem proper. Acts 1889, p. 10. Such is the plain requirement of the statute, and it would seem that a nonobservance thereof would ordinarily avoid the election. But this identical question came before our Supreme Court in Davis' case, 75 Texas, 420. The city of San Marcos was divided into four wards, but the Commissioners Court established two voting precincts without reference to the wards, and including parts of the surrounding county. It was claimed that this act of the County Commissioners Court, in ignoring the existence of the city wards, would make the election a nullity. It was answered by respondent, that while it was true that such had been the method of laying out the voting precincts, yet it was the customary method; that for many years prior thereto the precincts had been so laid out and elections held therein without objection.

In passing on the sufficiency of the answer a majority of the court, notwithstanding a strong dissenting opinion by Justice Henry, sustained the election, holding that although the Commissioners Court had laid out the voting precincts regardless of wards of the city or town which, by statute, were made voting precincts, yet the elections having been fairly held in the precincts so laid out, without objection from any quarter, should not be declared invalid unless it was shown that the Commissioners Court had acted with a fraudulent purpose. The opinion, as we understand it, seems to rest upon two grounds: 1. The Commissioners Court, being charged with the duty of laying out the voting precincts, had, by disregarding the wards, practically decided they did not exist, and to prove that they did exist in that character of contest (suit by quo warranto to try the right to the office of sheriff) was a collateral attack on their judgment. 2. That the law in reference to voting precincts, and which prescribes the duty of the Commissioners Court in regard thereto, fails to declare that a noncompliance therewith will invalidate the election as to those precincts;

that the observance of the wards by the Commissioners Court in laying out the voting precincts is not absolutely essential to secure a fair expression of the popular will, and the law having failed to make it an essential prerequisite to the validity of the election, the court would not make it so.   See to same effect, Bell v. Faulkner, 84 Texas, 187.

Now, we can see no reason why the last ground is not applicable to and decisive of the question at bar.   If the position is sound it applies to any election, whether general or special, in which the Commissioners Court is empowered to define the voting places.   Whatever view we might entertain if the question was open, need not be here considered.   Deference to the views of the Supreme Court, as we understand them, incline us to hold that the position of appellant here considered is not well taken.   There is no question of the fairness of the election in this case.   The Commissioners Court of Hill County, on the 12th of February, 1885, divided the Hillsboro precinct into four voting precincts without reference to the wards of the city, as was done in the San Marcos case, and ever since 1885 to the present time, except in 1890, when the court house was being rebuilt, all elections, general and special (except city elections), had been held in the voting precincts as thus laid out.   At the local option election here attacked the people had all voted at the same boxes at which they had been accustomed to vote for years past, without objection or protest from any quarter, and there is here no suggestion of fraud or wrong on the part of the Commissioners Court, or any one, and the votes were cast at what the voters supposed to be the proper places.

But relator earnestly contends that the election is void, because, as a matter of fact, the voting places for each of the four Hillsboro voting precincts were held in the court house building, which is situated outside of said precincts, and said votes were cast in violation of the constitutional requirement that all electors shall vote *in* the election precinct of their residence.   Const., art. 6, sec. 2.   It seems that in laying off the Hillsboro precinct into four voting precincts, in 1885, the Commissioners Court began at the southwest corner of the court house square, then ran north with the west boundary of said square into the country to a certain point; thence west, south, and east to the beginning, as Hillsboro voting precinct *number 1.*   Thus it appears that precinct 1 went no nearer to the court house, where the vote of that precinct was polled, than the west boundary of the court house yard— some fifty or sixty feet from the building.   So precinct number 2 began at the southwest corner of the court house square, and ran out west, south, east, and north to the *southeast corner* of the square.   Precinct number 3 began at the southeast corner of the square, and ran out south, east, north, and west to the *northeast corner* of the square; and precinct number 4 began at the northeast corner thereof, and ran out east, north, west, and south to the *northwest corner* of the square.

Thus it will be seen that the last three voting precincts did not close, and none of them included or excluded the court house, except precinct 1.

It was also shown that precinct 1 always voted in the northwest room, precinct 2 in the southwest room, precinct 3 in the southeast room, and precinct 4 in the northeast room of the court house.   At this election the same rooms were voted in, except that, for some cause not stated of record, the voters of precinct number 2 voted in a room adjoining the southeast corner in which the voters of precinct 3 cast their votes. The room used on this occasion by the voters of precinct 2 was situate thirty feet distant across the hallway from the room customarily used by them, but it was on the same side of the building. The question arises, is there here presented such a violation of article 6, section 2, of the Constitution as will avoid the election as to the four election precincts of Hillsboro?

Appellant contends, that if the ballot box was accidentally placed just across the limits of the voting precinct it would, regardless of the reason of its being placed there and of the good faith of the voters, avoid the election as to that precinct, by the very terms of the Constitution which require the voting to be done *in* the precinct of the voter. While we readily concede that the voting place should be within the limits of the voting precinct, yet we can not concur in the application of the constitutional provision to this case, as contended for by relator. The object of a provision of this character is to insure a fair and honest election by requiring each voter to cast his ballot at the same place where his neighbors voted, and those to whom his qualifications were best known, and by whom, if necessary, they could be challenged. Cool. Const. Lim., 754.   Hence the inhibition is against a voter voting at any other poll than that of his own voting precinct, that is, the precinct of his residence.   Indeed, this inhibition was the very purpose of the constitutional provision under discussion.   Under the prior Constitution of 1869 (article 6, section 1), a voter could vote in any voting precinct in the county of his residence.   But the evils resulting from the exercise of this right became so manifest that they led to the adoption of the present provisions.

Such then being the purpose of the Constitution, it certainly should not be invoked to set aside an election because the ballot box was accidentally placed a few feet across the limits of one of the precincts; a ballot box in which the entire voting precinct cast its ballots, as it had been accustomed to do for years past, and under the belief that it was within the precinct.   It is to be observed that this is not a case where the votes were cast *in some other* precinct.   The evidence shows the court house was in fact situate in no one precinct, but was common territory to three of the said voting precincts.   Precinct number 1 was the only precinct that stopped at the court yard, and in sixty feet of the

room where its polls were customarily held.   To set aside the election in precinct number 1 for such a cause would be to hold that an election confessedly fair could be avoided by a mistake that tended in no way, directly or indirectly, to deny or abridge the right of voting or impede its exercise.   Cool. Const. Lim., 758.   It is essential to the validity of an election that it be held at the time and in the place provided by law; and it is a rule to which there are but few exceptions, that an election held at an *improper place* avoids the election, even without proof of fraud or injury.   But one exception to the rule is where the voting is done at the same place for years, the people supposing it to be the true place, though in fact it was different from the place fixed by law.   6 Am. and Eng. Encyc. of Law, 323.   Nor can we hold the change of the polls of precinct 2, from its usual place across the hallway of the court house to another room, sufficient to avoid the election held therein.   The distance was very small; the voters knew where the poll was; practically it was the same place, being on the same side of the building.   It could in no possible way have affected the election.   There was no fraud or improper motive suggested in making the change.   Dale v. Irwin, 78 Ill., 170;  Wakefield v. Patterson, 25 Kan., 709;  Steel v. Calhoun, 61 Miss., 556.

It results from the foregoing views that we do not think there has been any violation of the constitutional provision invoked by relator.

Relator contends, that through carelessness or mistake an area of 1500 acres was not included in any of the election precincts, as laid out by the Commissioners Court, which constituted a portion of precinct 1 of Hill County, over which the local option must prevail if adopted, and that there are ten or more voters residing upon the said tract of 1500 acres who are thereby disfranchised.   The evidence shows that at least some five or six of these voters were known to have voted at Hillsboro.   But concede that none voted, the number so disfranchised was too small to have possibly affected the result; and in the absence of fraud or improper motive on the part of the Commissioners Court, we can see no reason to disturb the election.   If, indeed, the contention of relator is correct, it would follow that if the area so left out amounted to forty acres, and with but a single resident voter thereon, it would invalidate the election for the entire precinct, and not only in local option elections, but in all others.   We can not agree to this position.   We think the number so disfranchised must bear such a relation to the number actually voting as would suggest a probability that their participation in the election might in some way have affected the result.   Elections are the ultimate expression of the sovereign will.   When fairly expressed, that is, free from taint of fraud or charge of improper conduct, it becomes the duty of courts to sustain them where it can be done by a liberal construction of the laws relating to elections, rather than defeat them by requiring a rigid con-

formity to law.  The great public purposes which are accomplished by elections demand this.

The judgment of the County Court is affirmed, and relator is remanded to the custody of the sheriff of Hill County.

*Affirmed, and relator remanded to custody.*

Judges all present and concurring.