MICHAEL A. BRATTLAND v. W. W. CALKINS.[1]

January 4, 1897.

Nos. 10,453—(300).

<table>
<tr><td>67</td><td>119</td></tr>
<tr><td>82</td><td>334</td></tr>
<tr><td>82</td><td>335</td></tr>
</table>

**Election Precinct—G. S. 1894, §§ 10, 11.**

An attempt to establish, under G. S. 1894, §§ 10, 11, an election precinct out of portions of two counties is an absolute nullity; and the residents of the territory included in such alleged precinct have no more right to vote than if such precinct had never been established.

**Same—Petition—Publication.**

Section 10 requires the voters to petition the governor, at least eight weeks before election, to establish the precinct, and section 11 is construed to require the list of precincts established to be published at least six weeks before election. *Held*, these provisions are mandatory, and, when the petition was presented not more than five weeks and five days before election, and the list of precincts established was not published earlier than the day before election, the precinct was not established at all for the purposes of such election.

**Same—Indian Reservation—Unorganized Townships.**

Whether the state authorities have power to organize, for election purposes, the White Earth Indian reservation, quære. Whether the governor, under sections 10 and 11, or the board of county commissioners, un-

[1] Reported in 69 N. W. 699.

der G. S. 1894, § 692, should organize election precincts in territory having no township organization, in a county organized to the extent that Norman county is, quære.

Appeal by W. W. Calkins from a judgment of the district court for Norman county declaring M. A. Brattland to be duly elected judge of probate of that county, entered in pursuance of the findings and order of Ives, J.    Affirmed.

*H. Steenerson, Ira B. Mills,* and *W. W. Calkins,* for appellant.

The precinct having been established by the proper authority, the claimant having allowed the election to be held without protest, and having awaited the result of the election, and endeavored to secure its benefits to himself, he ought not to be allowed to repudiate the results on the ground of defects in the proceedings establishing the precinct.    State v. Langlie, 5 N. D. 594, 67 N. W. 958; Currie v. Paulson, 43 Minn. 411, 45 N. W. 854.    The unorganized and partially organized counties mentioned in G. S. 1894, § 10, have reference to counties unorganized or partially organized for election purposes. Under G. S. 1894, §§ 657, 692, the county commissioners in any county, unorganized or organized, have authority to establish election districts in territory not organized into townships.    Thus the jurisdiction of the county commissioners, if they have any, is concurrent with that of the governor.

It does not appear that any nonresident of Norman county voted, and the claimant would not be injured unless he can show that such voters actually cast their votes in this precinct.    The error is a mere irregularity by which the claimant has not been injured.    Peard v. State, 34 Neb. 372, 51 N. W. 828; State v. Horan, 85 Wis. 94, 55 N. W. 157; State v. Leavitt, 33 Neb. 285, 49 N. W. 1097.

The publication was not material unless it appears further that the claimant was prejudiced.    The publication was within the literal wording of the statute.    The notice was published "within" at least six weeks before the day of election.    See Peard v. State, supra; State v. Horan, supra; State v. Leavitt, supra; State v. Thayer, 31 Neb. 82, 47 N. W. 704; Adsit v. Secretary of State, 84 Mich. 420, 48 N. W. 31; People v. Village of Highland Park, 88 Mich. 653, 50 N. W. 660.

There are persons on an Indian reservation not tribal Indians who have a right to vote. See Act of Congress, Feb. 8, 1887; State v. Norris, 37 Neb. 299, 55 N. W. 1086. The state of Minnesota has jurisdiction over its territory unless restricted by the act authorizing the admission of the state into the Union or by some treaty of the United States with the Indians. There is no such limitation. State v. Campbell, 53 Minn. 354, 55 N. W. 553; Const. art. 15, § 2; State v. Norris, supra. Foster v. Board of Commrs., 7 Minn. 84 (140), was decided prior to the adoption of the constitution, and is in effect overruled by Truscott v. Hurlbut L. & C. Co., 73 Fed. 60, 19 C. C. A. 374. Earl v. Godley, 42 Minn. 361, 44 N. W. 254, is not in point.

*M. A. Brattland,* for respondent.

If the governor's action is conclusive then no official act of his which is illegal can be impeached. By G. S. 1894, §§ 10, 11, the governor's power to establish new election districts is expressly limited to unorganized and partially organized counties. These words have a positive and well-known legal meaning. By G. S. 1894, § 692, county commissioners have power to establish election districts in unorganized territory within organized counties. These provisions are not contradictory nor inconsistent. The general repeal clause in the election act of 1893 does not affect organized counties or the power of county commissioners in such counties. For the construction of G. S. 1894, § 657, see State v. Parker, 25 Minn. 215; Smith v. Anderson, 33 Minn. 25, 21 N. W. 841.

Norman county was organized pursuant to Laws 1881, c. 92, and its creation was proclaimed by the governor Nov. 28, 1881. The east boundary line of Norman county was established by the act defining the west line of Beltrami county. G. S. 1894, § 542. At that time Norman was a part of Polk county. An election district cannot be established so as to include parts of different counties. See G. S. 1894, §§ 10, 692.

The petition for the establishment of an election district in an unorganized county shall be made to the governor "at least eight weeks before any general election." By G. S. 1894, § 11, "the governor shall, within at least six weeks before a general election," publish a list of election districts established by him. When a thing required to be done is shown to have been done in a certain way,

there is no presumption that it is also done in some other way.   Barber v. Morris, 37 Minn. 194, and cases cited on page 196; 33 N. W. 559, and cases cited on page 561.   Godfrey v. Valentine, 39 Minn. 336, 40 N. W. 163.

By treaty with the Mississippi band of Chippewa Indians, March 19, 1867, the government reserved the White Earth Indian reservation out of all the pre-existing Indian country within Minnesota, for the exclusive benefit and use of the Indians.   It was exempted from taxation and could not be sold.   Revision of Indian Treaties, 272; 16 U. S. St. at Large, 719.   This is substantially the present status of this reservation.   The Indian country was defined by act of congress, June 30, 1834 (4 U. S. St. at Large, 729).   The subsequent adoption of a state constitution did not affect the legally reserved Indian country and reservations.   The authorities cited by appellant are cases where perfected allotments have been made to the Indians and they have abandoned tribal relations.   The intention of the Federal government with respect to the White Earth reservation is still undecided.   Minnesota cases declare the state has no civil jurisdiction over legally reserved Indian reservations.   United States v. Shanks, 15 Minn. 302 (369).   As to Indian country, see Forty-Three Cases Cognac Brandy, 14 Fed. 539;   United States v. Martin, 14 Fed. 817.

CANTY, J.   This is an appeal from the judgment of the court below deciding an election contest over the office of judge of probate of Norman county, which contest was conducted under G. S. 1894, §§ 186, 190, 191, 194.   On the face of the returns of the general election held November 3, 1896, the appellant, Calkins, received 1,387 votes, as against 1,364 for the respondent, Brattland, or a majority of 23, and was declared elected.   Thereupon Brattland served a notice of contest, and the matter came on for trial before the district court.   The vote of the precinct of Beaulieu was on such trial thrown out.   Calkins received 70 votes in this precinct and Brattland 28. This left 1,317 votes for Calkins and 1,336 for Brattland, and the latter was by the court declared elected by a majority of 19.

The question presented on this appeal is whether or not the residents of the territory covered by the alleged voting precinct of Beaulieu were entitled to vote for probate judge at the election in question.   The portion of Norman county included in this alleged precinct

is a part of the White Earth Indian reservation, and, of course, there are no organized townships in the same, which, under G. S. 1894, § 8, would constitute election districts. Claiming to act under G. S. 1894, §§ 10, 11, the governor, on October 10, 1896, made an order purporting to establish a new election district, "in Norman county," out of townships Nos. 144, 145, and 146, in ranges 38, 39, 40, 41, and 42. Of these 15 congressional townships, 12 are in Norman county and 3 (also in the reservation) are in the unorganized county of Beltrami; the line between the two counties being the line between ranges 38 and 39. The governor had no authority, under the law, to establish an election precinct out of a portion of each of two counties, and we are of the opinion that the attempted establishment was absolutely void.

Appellant contends that, as the order describes the territory included in the precinct as being in Norman county, it is evident that the three townships in range 38 were included by mistake. In answer we will say that we cannot construe the description in this order as we would the description in a voluntary deed, which is construed most strongly against the grantor and in favor of the grantee. We cannot, for the purpose of giving effect to this order, reject as surplusage the three towns outside of Norman county. To attempt to uphold in this way such an extremely inaccurate public transaction would result in great confusion for all future time. Such gross error in the establishment of political divisions that are to endure perhaps for many years would be a fruitful source of mistake on the part of voters and local officers at every election, and cannot be tolerated.

Appellant cites Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95, as authority for his position that, when the vote is cast and counted, an irregularity as to the territorial limits of a voting precinct is not a sufficient cause for throwing out the vote of that precinct. That case grew out of the mistake of supposing that a village was a separate voting precinct from the rest of the township. The voters of the village voted at a different polling place from those of the rest of the township. In that case the voters were entitled to vote somewhere for all officers for whom any votes were cast. In this case, the voters were not entitled to vote at all until the territory was organized for voting purposes, which had, in fact, never been done, and,

besides, the residents of the three townships in Beltrami county would in no event have a right to vote for probate judge of Norman county.

It does not appear whether or not any residents of these three towns voted in this precinct at this election, and appellant contends that the burden was on the contestant to show that they did so vote before he is entitled to have the votes of the precinct thrown out.   Appellant mistakes the radical character of the irregularity in question. It is not a temporary or casual irregularity, which may not occur again, but it is one which must necessarily continue to occur at every election, and be a source of perpetual strife, as long as the precinct remains.   Public policy will not tolerate the recognition of such a precinct at all, and we must hold that the attempted organization of it is an absolute nullity.

2. Another ground of contest presented by respondent is that all of the proceedings for the establishment of this precinct were had too late to comply with the law.   Section 10, G. S. 1894, provides:

"Whenever any number of voters, not less than eight, residing in an unorganized or partly organized county, shall, at least eight weeks before any general and six weeks before any special election, petition the governor to establish a new election district, designating the boundaries of the same," etc., he is authorized to establish such district.

Section 11 provides:

"The governor shall, within at least six weeks before a general election and within four weeks before a special election, publish in one newspaper published at the state capital a list of all election districts by him established in unorganized counties, together with the places where the elections are to be held, and the names of the judges of election by him appointed."

While section 11 uses the words "within at least six weeks," it seems to us clear that the legislature meant that the list of precincts established should be published at least six weeks before election, and not during the six weeks, especially as section 10 requires the petition to be presented at least eight weeks before election.

The petition for the establishment of this precinct is dated September 24, 1896, or two weeks and two days too late to give the eight weeks before election required by the statute.   The list was published once in the St. Paul Dispatch on November 2, the day before election, while the statute requires that it shall be published at least

six weeks before election. We must hold these statutory provisions mandatory, and not directory, in view of the necessity of notice to the voters of the changed conditions which give them an opportunity to vote, and the necessity of preparing poll lists 20 days before election, and posting the same 10 days before election, together with notice of the time and place of the meeting of the board to correct the lists, as required by G. S. 1894, § 60. Then, even if this voting precinct was in other respects regular, it must be considered as organized too late, or not organized at all, for the purpose of the election in question, and the vote cast in that precinct at that election should not be counted.

There is nothing in appellant's position that, although these irregular proceedings appear, it should still be presumed that the precinct was regularly established by other and different proceedings. No such presumption exists. Barber v. Morris, 37 Minn. 194, 33 N. W. 559; Godfrey v. Valentine, 39 Minn. 336, 40 N. W. 163.

3. Whether or not the state authorities have power to organize, for election purposes, the territory included within the White Earth Indian reservation, is a question which it is unnecessary to decide on this appeal, and we decline to consider that question at this time. Neither is it necessary to consider the question whether the governor, under sections 10 and 11, or the board of county commissioners, under section 692 of the General Statutes of 1894, is the proper authority to organize election precincts in territory having no township organization, in a county organized to the extent that Norman county is, or whether the power conferred on each authority is in such a case concurrent.

Judgment affirmed.