C. G. HANKEY v. G. E. BOWMAN.[1]

January 24, 1901.

Nos. 12,486—(244).

### White Earth Indian Reservation.

The laws of the state of Minnesota, both civil and criminal, including the statutes on the subject of elections, extend over the White Earth

[1] Reported in 84 N. W. 1002.

Indian reservation, and election districts may be established therein upon petition to the proper authorities by the requisite number of legal voters.

## Creation of Election Districts—G. S. 1894, § 10.

A proper construction of G. S. 1894, § 10, does not confer authority upon the governor of the state to create and establish election districts in the organized counties of the state. The power there conferred is limited to unorganized or partly organized counties; and partly organized counties referred to in the statute are such as are not fully organized for judicial, record, and other public purposes, and not to counties with an incomplete township organization.

## Irregularity in Appointment of Officers.

Elections conducted fairly and honestly, where no fraud or illegal voting is charged or shown, will not be set aside for mere irregularity in the manner of the appointment of the election officers or in the conduct of the election.

## Creation of Election Districts by Governor.

It appears in this case that the governor of the state, acting under G. S. 1894, § 10, and following a long line of precedents set by his predecessors in office, which precedents were, by the silent acquiescence of the people, sanctioned and approved, upon a petition of the requisite number of legal voters created and established three election districts in Norman county, a fully organized county of this state. The governor acted in good faith, and upon a construction of the statute warranting the action. Officers of election were duly named by him; who legally qualified, and conducted the election honestly and fairly, and in accordance with the laws of the state. *Held,* that the election districts were created and established under color of law; the officers thereof were de facto officers, whose acts were as valid as though possessed with de jure qualifications; and, in the absence of fraud or illegal voting, the election was legal, and should not be set aside and the voters disfranchised.

The county canvassing board of Norman county having declared G. E. Bowman to have received the highest number of votes cast and to have been elected to the office of county superintendent of schools of that county at the general election held November 6, 1900, C. G. Hankey, a rival candidate, appealed to the district court for said county. The case was heard before Watts, J., who found in favor of the contestant. From a judgment entered pursuant to the findings, the contestee appealed. Reversed.

*E. M. Niles* and *Calkins & Calkins,* for appellant.
*M. A. Brattland* and *Ole J. Vaule,* for respondent.

BROWN, J.

Election contest for the office of superintendent of schools of Norman county.

The facts are undisputed, and as follows: Appellant and respondent were both candidates for the office of superintendent of schools at the general election held in Norman county on November 6, 1900. Respondent received 1,486 uncontested votes at said election, and appellant received 1,459 uncontested votes. The vote of certain election districts created and established by the governor of the state was rejected by the district court, and respondent declared duly elected to the office. The votes cast in such rejected districts would, if counted, elect appellant. In reference to these three districts the facts are as follows: Norman county is a fully organized county of the state, having a full set of county officers, but a large part of its territory, namely, township 146 of ranges 40, 41, and 42; township 145, of ranges 40 and 41; township 144 of ranges 40 and 41; and township 143 of ranges 40 and 41,—are within the White Earth Indian reservation, and not organized into townships. On September 21, 1900, the governor of the state, acting under and pursuant to G. S. 1894, § 10, by proper proclamation established and created three election districts within said county, and out of territory so within the Indian reservation. Such new districts were particularly described with respect to boundaries, and judges of election were duly named and designated. The districts are known as "Rice River," "Pembina," and "Twin Lakes." The section of the statutes under which the governor acted is as follows:

"Whenever any number of voters, not less than eight, residing in an unorganized or partially organized county, shall, at least eight weeks before any general and six weeks before any special election, petition the governor to establish a new election district, designating the boundaries of the same, which shall not be within five miles of the polling place of any existing district, it shall be the duty of the governor, and he is hereby authorized and directed to cause to be established such district, or districts, at such place or places as the petitioners may require."

An election was duly and regularly held in the districts so created and established, and of the votes cast therein appellant received a majority, which, added to his vote in the other districts of the county, elected him to the office in question. There is no claim of fraud, illegal registration, or illegal voting at such election. For aught that appears from the record, all who voted in such districts were legal voters of the county.

This contest is based on the grounds:

1. That the governor of the state had no authority to establish election districts within the Indian reservation.

2. That he had no authority to establish such districts in Norman county, because it is a fully organized county.

It is contended by appellant that election districts may be established within the reservation, and that the governor of the state has authority to do so under the statute above quoted; and, further, that, even though a strict construction of such statute would not confer such authority upon the governor, still that, by a long continued exercise of such authority by the executive officers of the state, with the sanction and approval of the people, the statute has been given a practical construction which should be followed and applied. And he further contends that, inasmuch as all parties acted in good faith, and took no steps to prevent the election in those districts, but participated therein, and contested for the votes to be there cast, the election should not be set aside, and the voters disfranchised.

1. May election districts be established within the White Earth Indian reservation? We think that the question must be answered in the affirmative.

There is no question but that the territory comprising the election districts in question was within the boundaries of Norman county, though wholly within the reservation. The status of the White Earth reservation with respect to the question whether the laws of this state extend over it and apply to citizens resident thereon is firmly settled by the decisions of this court in State v. Campbell, 53 Minn. 354, 55 N. W. 553; State v. Cooney, 77 Minn. 518, 80 N. W. 696; and Selkirk v. Stephens, 72 Minn. 335, 75 N. W. 386. The question is discussed in the latter case, and we need

only to refer thereto for a very clear statement and understanding of the law. All the laws of the state, both civil and criminal, including the statutes with reference to elections, extend over this reservation, and the state has never relinquished its authority to enforce them, and apply them to citizens residing there. Citizens of the United States are permitted to reside on the reservation under certain restrictions, and property owned by them and located therein may be taxed. That the county has never extended its authority over this territory does not affect the question one way or the other. The fact remains that it is a part of Norman county, and all the laws of the state extend over and are applicable to it, and to citizens residing within it.

Whether Indians are legal voters is a question not before us, and we do not determine it. It does not appear that any persons voted at the election in those districts who were not lawfully entitled to vote. However, Indians residing upon the reservation may become citizens of the United States under certain conditions, and entitled to all the rights and privileges of such citizens. Act Cong. Feb. 8, 1887 (1 Supp. Rev. St. U. S. .p. 534); State v. Norris, 37 Neb. 299, 55 N. W. 1086; State v. Denoyer, 6 N. D. 586, 72 N. W. 1014.

We conclude, therefore, that the election laws of the state extend over, and may be put into operation on, this reservation, and that election districts may be established therein.

2. It is contended by respondent that, conceding authority to establish election districts within the reservation, the governor had no power to form them in Norman county, because that county is an organized county, with a full set of county officers, including a board of county commissioners; that, because of such organized condition of the county, the board of county commissioners alone have authority to act in that behalf.

We have set out the statute under which the governor proceeded, and the statute conferring power upon the board of county commissioners provides that such commissioners may, upon petition of not less than ten legal voters not residing within ten miles of any established district, create and establish an election district within the county at such point as will be most convenient

for the persons petitioning. G, S. 1894, §§ 692, 693, provide for the appointment of election officers for the districts so created. The statute conferring the power upon the governor is confined to unorganized or but partly organized counties, while the statute just mentioned, extending the same power to the board of county commissioners, was undoubtedly intended to refer exclusively to fully organized counties, with a full set of county officers, but whose territory was not completely organized into townships or election districts. The theory of the appellant with respect to the construction of the statute conferring the power upon the governor is that the statute applies to wholly unorganized counties, and to counties fully organized for the conduct of public affairs, but which have an incomplete township organization. We do not concur in this view.

It is well known that at the time of the passage of the statute under which the governor acted there were organized and partly organized counties in the state. We do not refer to the condition of the counties with respect to township organization, but with reference to organization for public purposes. The organized county had a full set of county officers, and was equipped and empowered to conduct the business and affairs of the county in conformity with the laws of the state. A partly organized county had but a board of county commissioners, but possessed no authority such as is conferred upon the organized county. State v. Parker, 25 Minn. 215. It is very clear to us that this statute was enacted with reference to the wholly unorganized counties of the state, and such as were only partly organized, as was Big Stone county in the case just cited. We therefore hold, though it is not necessary to a decision of the case, but that there may be a guide for the future, that a proper construction of this statute does not confer upon the governor power to establish election districts in the fully organized counties of the state. The authority to establish such districts in organized counties rests with the board of county commissioners, under G. S. 1894, § 692.

3. It is a rule of universal application that elections conducted fairly and honestly, where no fraud or illegal voting is charged or shown, will not be set aside for mere irregularity in the manner

of the appointment of the election officers or in the conduct of the election. Peard v. State, 34 Neb. 372, 51 N. W. 828; Wells v. Taylor, 5 Mont. 202, 3 Pac. 255; People v. Cook, 8 N. Y. 67; Keller v. Chapman, 34 Cal. 635; Ex parte White, 33 Tex. Cr. R. 594, 28 S. W. 542; Steele v. Calhoun, 61 Miss. 556.

"Where the sovereign will, as expressed at an election, is fair, free from taint of fraud or charge of improper conduct, it becomes the duty of courts to sustain them, if it can be done, by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to law." Ex parte White, supra.

"The rule may be said to be well settled that courts will not disfranchise voters when the election was fair, and the result free from doubt, unless compelled to do so by the peremptory requirements of the law." Peard v. State, supra.

In this case it appears that the election districts in question were established by color of authority,—by the governor of the state acting in accordance with a construction of the statutes given to it and acted upon by his predecessors in office. It has been the practice of the executives of this state for many years past to form election districts under the statute in question, when petitioned to do so by the proper number of legal voters, not only in unorganized counties, but in counties fully organized, but containing territory not organized into townships and election districts, and extending into remote parts and into Indian reservations. The statutes have been construed by the executive officers of the state to fully authorize such action by the governor, and such authority was never called in question until the case of Brattland v. Calkins, 67 Minn. 119, 123, 69 N. W. 699, came before the court. In this instance the governor followed precedents set by his predecessors in office, which were sanctioned and approved by the silent acquiescence of the people, and there is no hint of fraud on his part. He proceeded in good faith acting on this practical construction of the statute; officers of election were duly named by him, who qualified and conducted the election fairly, honestly, and in accordance with the laws of the state. The election districts were created under color of law, and the officers thereof were de facto officers, whose acts were as valid and bind-

ing as though they possessed de jure qualifications. Gilleland v. Schuyler, 9 Kan. 569.

Should such an election be set aside, and legal voters disfranchised, in the absence of some showing of fraud or illegal voting? We think not. The citizens residing within the reservation had the undoubted right to have districts created, either by the governor of the state or the board of county commissioners. The law has been so construed in the past as to confer the power to create them upon the governor,—a mistaken construction, but one adopted and followed with the approval of the people,—and we hold, there being no fraud or illegal voting, that the election should be sustained. We take judicial notice of the proceedings and proclamations establishing such districts.

Our conclusion is strengthened by the fact that the question as to the authority of the governor to create such districts in this same county came before us and was presented for decision in the case of Brattland v. Calkins, supra, and the court, though referring to the point, left it undecided. The executive officers of the state were justified in following former precedents in such matters, inasmuch as this court had, when called upon to determine their legality, declined to declare them illegal or unauthorized.

The Brattland case is not in point on the question presented in the case at bar. It was held in that case that the election district there in question was unauthorized and illegal, because it was created out of territory from two different counties. It contained territory in both Norman and Beltrami counties. In this case the districts are wholly within Norman county. One of the tests of the illegality of the district in the Brattland case was the fact that the people residing in that part of the district extending into Beltrami county had no right to vote for county officers of Norman county.

Our conclusion is that the election should be sustained. The judgment appealed from is therefore reversed, and the cause remanded, with directions to the court below to award the office in question to appellant.

Judgment reversed.