ROBERT S. HUGHES v. ELLIOT A. UPSON.[1]

June 28, 1901.

Nos. 12,644—(166).

### Election—Ballots Examined.

A number of ballots involved in a contest over the office of county commissioner examined and considered. *Held*, that the court below counted these ballots accurately, and was correct in its conclusion of law that the contestee was entitled to the office.

The county canvassing board of Blue Earth county having declared Elliot A. Upson to have received the highest number of votes cast and to have been elected to the office of county commissioner of that county, at the general election held November 6, 1900, Robert S. Hughes, a rival candidate, appealed to the district court for said county. The case was heard before Cray, J., who found in favor of the contestee. From a judgment entered pursuant to the findings, the contestant appealed. The contestee also appealed from certain portions of the judgment. Judgment affirmed.

*Thos. Hughes*, for contestant.

*D. A. Reed*, *W. E. Young* and *Pfau & Pfau*, for contestee.

COLLINS, J.

This is a contest over the office of county commissioner, Third district, Blue Earth county. The court below found the facts, and, as a conclusion of law, that the contestee, Upson, was duly elected to the office.

There were twenty-nine ballots in dispute when the statutory referees finished their labors and made reports,—one being signed by two referees, the other by one,—and the court below was simply required to pass upon these disputed ballots. As we regard the case, we are not compelled to determine as to all of these. The contest is disposed of by examination of those which have been relied upon by the attorney for the contestant, Hughes,

[1] Reported in 86 N. W. 782.

as establishing his title to the office, when properly counted. These ballots are in part numbered, and in part lettered. As prepared by the proper authorities for the use of the voters, the county ballot was in the ordinary form, containing the names of the candidates for congress, the legislature, county auditor, treasurer, sheriff, register of deeds, judge of probate, attorney, surveyor, coroner, clerk of the district court, superintendent of schools, and county commissioner, and, as named from the top to the bottom of the ballot, these names were in the above order; heavy black lines dividing the names of the candidates for one office from the names of the candidates for another office, while lighter lines separated the names of the candidates for the same office. All of this ballot necessary to be presented in order to illustrate our decision is as follows:

| | | | |
|---|---|---|---|
| Superintendent of Schools. | W. E. FREEMAN—REPUBLICAN. | | |
| Superintendent of Schools. | W. R. THOMPSON—{ DEMOCRAT. / PEOPLES. | | Vote for one. |
| Superintendent of Schools. | | | |
| County Commissioner. | R. S. HUGHES—REPUBLICAN. | | |
| County Commissioner. | ELLIOT A. UPSON—{ DEMOCRAT. / PEOPLES. | | Vote for one. |
| County Commissioner. | | | |

We here call attention to the fact that the names of the candidates for the office of county commissioner were printed last upon the ballot, immediately below a heavy black line, above which were the names of the candidates for superintendent of schools.

The first ballot to be considered is the one numbered 2. This had an X in the square opposite the name of the contestant, but in the blank space at the bottom, provided for writing in the name of a candidate for the office of county commissioner, was written the name of John "Rhoads," with an indelible pencil. There was a duly-qualified elector in the town in which this ballot was cast by the name of John Rhodes, and he was eligible to the office, but was not a candidate for the same. There was no cross mark opposite this written name. The court below rejected the ballot, refusing to count it for any one; and the contestant insists that it should have been counted for him, that it was intended for him, and that the intention was shown by the X opposite his name.

In the election law (G. S. 1894, §141) which prescribes rules for determining the intention of a voter, it is provided that ·

"When the elector shall have written the name of a person in the proper place for writing the same, he shall be deemed to have voted for that person, whether he makes or fails to make a cross-mark (X) opposite such name."

This is really a repetition of a part of section 105, where the rules for making and folding ballots are laid down. The name of John "Rhoads" having been written in the ballot, the statute required that it be counted as a ballot for him, unless· it appears therefrom by reason of the X opposite the name of the contestant, that it was intended as a vote for the latter, or unless the real intent of the voter cannot be determined. We are unable from any examination of the ballot to ascertain the intention of the voter. He not only placed an X in the space opposite the contestant's name, but he took the trouble to write the name of another person, eligible to the office, in the space provided for that exact purpose. He left the matter in doubt, and one of these acts negatives and destroys the other. It is a case where the intention cannot be safely ascertained by an inspection of the ballot, and therefore the rule as to intent laid down in Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500, is not relevant. It follows that the court below decided correctly when it refused to count this ballot for Mr. Hughes.

His counsel next insists that he was entitled to have ballots numbered 3 and 5 counted for him. Each of these had an X placed in the square opposite the blank space provided for writing in the name of a candidate for the office of superintendent of schools, which space was immediately above the heavy dark line before mentioned; the square being directly above that opposite contestant's name. In each one of these ballots there was an X in the square opposite the name of W. E. Freeman, one of the candidates for the office of superintendent of schools, and the court below found that neither should be counted for the contestant. It is argued that under the rules laid down in Pennington v. Hare, 60 Minn. 146, 62 N. W. 116, and Truelsen v. Hugo, supra, both of these ballots should have been counted for him. We cannot concur in this view. There is nothing in the facts or in the opinion in the Pennington case which justifies this claim. In the Hugo case the X upon the ballot was quite differently placed from those in the case at bar. There the contestee's name was the first one on the ballot, and above it there were no blank spaces, squares, or lines, and no names of other candidates. The X was just above and near the square opposite contestee's name, and the intention of the voter was thereby made perfectly apparent. It was evident that he intended to vote for the contestee, for under no circumstances could the X be referred to or be intended for any other candidate. In this case the X was not only above the heavy black line, but it was as near the name of W. R. Thompson, candidate for superintendent of schools, as it was that of the contestant, candidate for county commissioner. The court below decided correctly as to these ballots.

The court also declined to count ballot No. 4 for either candidate. It had a straight perpendicular mark, which might be called a letter I or a figure 1, in the square opposite the name of the contestant, and it had a round mark—a letter O or a cipher —in the square opposite the name of the contestee. The court held that it was impossible to decide for which of these gentlemen the vote was cast. It is provided in section 141, supra, that

"If an elector in marking his ballot shall use a mark other than a cross-mark (X), as V, or I, or —, or O, or other mark clearly

indicating an intent to mark against any name, it shall be deemed a sufficient vote for the candidate or candidates against whose name or names so marked; but not if the cross-mark (X) be used' elsewhere on the same ballot."

By this provision it will be seen that a straight perpendicular mark (an I), as well as a round mark (an O), when used so as clearly to indicate an intention to mark against any name, is recognized by the statute as a legitimate and sufficient method of marking. Either of these marks is of the same value as an X. The voter in this particular case used marks recognized by the statute opposite each name, and the situation is precisely as if he had an X opposite each. We cannot determine what the intention of the voter was when he put a straight perpendicular mark (either the letter I or the figure 1) opposite the name of the contestant, and then put a round mark (an O or a cipher) opposite that of the contestee. Which candidate he favored was thus rendered uncertain. This ballot was properly rejected, as not to be counted for either of the two.

We now come to the three ballots lettered B, C, and D, which were substantially alike, and were counted for the contestee in the court below. Each of these had an X opposite the name of Mr. Upson. Their validity is challenged by counsel for contestant on the ground that the cross marks were erased, in effect, before the ballots were cast. From an inspection of each, it is seen that, after marking an X, each voter added to it by drawing another mark or marks over the same. We are clearly of the opinion that the condition of these ballots would not justify us in assuming that any erasures were intended. Each cross mark is somewhat disfigured by additions and unnecessary lines drawn over an X already made. Possibly the voter took this way to make his intention plain and beyond doubt. Perhaps he really tried to remove an X after making it, but this is wholly problematical. The rule laid down in the Pennington case is in point here:

"The statute does not, however, prescribe any inflexible rule as to what shall or shall not be accepted as a cross mark, and any mark, however crude and imperfect in form, if it is apparent

that it was honestly intended as a cross mark, and for nothing else, must be given effect as such; otherwise, electors unaccustomed to the use of pen or pencil might be disfranchised."

These ballots were properly counted below.

Our conclusion as to these ballots makes it unnecessary to consider the points made by counsel as to several which were not indorsed with the initials of all the judges, and as to others which bore the initials of one of the clerks, who in good faith acted as judge while one of the regular judges was absent at dinner; for the result would not be affected thereby. We hold that the contestee had a majority of two, precisely as was found by the court below.

The judgment appealed from is affirmed.