JAMES T. ELWELL v. EDGAR F. COMSTOCK.[1]

October 22—November 16, 1906.

Nos. 15,067—(201).

**Election by Ballot.**

Section 6 of article 7 of the constitution, providing that all elections, except for town officers, shall be by ballot, was intended to secure to the elector the privilege of exercising his right of franchise secretly and effectively, in view of which it is *held* that any method of conducting elections sanctioned by legislative authority, which will secure and effect that right, is a substantial compliance with the constitutional mandate.

**Voting Machine.**

Chapter 267, p. 400, Laws 1905, providing for and authorizing, under certain conditions and restrictions, the use of voting machines at elections in this state, does not contravene the provision of the constitution that all elections shall be by ballot.

**Power of Legislature.**

The legislature may delegate the power to determine some fact upon which a statute makes its own action depend.

**Voting Machine Commission.**

The power delegated to the voting machine commission created by chapter 267, p. 400, Laws 1905, to determine the efficiency of the voting machine thereby authorized to be used at elections in this state, is neither legislative nor judicial, but administrative, in character.

**Identified Ballot.**

A ballot cast at an election, which is so marked by the elector that his identity is thereby disclosed to any person other than the voter, is void.

**Same.**

When such a mark of identification appears upon a ballot, the elector who cast it cannot be heard to say that he did not intend the mark for that purpose.

[1] Reported in 109 N. W. 113, 698.

**Assignments of Error.**

Assignments of error respecting the action of the trial court in counting and refusing to count certain ballots considered and disposed of.

Appeal by both parties from an order of the district court for Hennepin county, Simpson, J., adjudging that the contestant, James T. Elwell, was duly elected as the nominee of the republican party for state senator from the thirty-ninth legislative district, and that his name be placed on the official ballot. Affirmed.

*George S. Grimes* and *John H. Steele,* for contestant.

*Welch, Hayne & Hubachek* and *Hale & Montgomery,* for contestee.

PER CURIAM.

This is a primary election contest commenced in the district court of the county of Hennepin. The trial court found and adjudged that the contestant, James T. Elwell, was duly elected at such election as the nominee of the republican party for the office of senator for the Thirty-Ninth senatorial and legislative district to be voted for at the next general election, and that his name be placed on the official ballot as such nominee. Both parties appealed from the order. The appeals have been heard and determined in this court, and public interests require that the result should be promptly announced. We therefore defer the filing of an extended opinion to a later day, and at this time simply announce the general conclusion reached, namely, that the order appealed from be affirmed, without costs to either party.

It is ordered that judgment be so entered, and, further, that the remittitur be sent down as soon as the judgment is entered.

On November 16, 1906, the following opinion was filed:

BROWN, J.

James T. Elwell and Edgar F. Comstock were rival candidates for the Republican nomination for senator of the Thirty-ninth senatorial district at the primary election held on September 18, 1906, and the proper canvassing board duly declared Comstock the nominee, issuing to him the usual certificate of nomination. Whereupon Elwell commenced this contest, under the provisions of section 203, R. L. 1905, basing the same on several grounds, claiming that a majority of the legal votes at said election were cast for him. Issue was joined, and

the matter came on for hearing before the court below, where it was found as a conclusion of fact that contestant had received a majority of one over contestee, and judgment was ordered declaring him the nominee. Contestee appealed.

Several questions are presented for consideration, which we dispose of in the order of their presentation on the argument.

The city council of the city of Minneapolis, in which the senatorial district in question is located, had, under the provisions of chapter 267, p. 400, Laws 1905, prior to the election in question, provided for and authorized the use in certain of the precincts of this senatorial district of the Dean ballot machine, a mechanical contrivance for voting without the use of paper ballots, and such machines were used in two of the precincts of that district. A majority of the votes so cast were in favor of contestant, which, if declared illegal, would throw the nomination to contestee. It is contended by counsel for contestee that the use of these machines was illegal, and the votes cast thereon should be excluded from the canvass. This contention is based upon the claim that chapter 267, p. 400, Laws 1905, providing for and authorizing the use of the same, is unconstitutional and void. It is urged that the statute is void for the reasons: (1) That the subject-matter thereof is not sufficiently expressed in the title; (2) that it violates section 6, article 7, of the constitution, which provides that all elections shall be by ballot, except for town officers; and (3) that it violates section 1 of article 3 of the constitution, in that it delegates legislative and judicial powers to the voting machine commission therein created.

1. The act is entitled "An act to authorize the use of voting machines at elections, and to authorize cities, villages and towns to issue bonds to defray the cost of the purchase thereof, and to repeal existing laws relating to voting machines." Under this title the legislature enacted generally for the purchase and use of voting machines under prescribed conditions and restrictions, and by section 3 created the "Minnesota voting machine commission," consisting of three members, including the attorney general of the state. The powers and duties of the commission are defined, and upon the result of its investigation and determination of the question whether a particular voting

machine may be used effectually to express the will of the voters rests the authority of the municipality, through its legislative body, to sanction and provide for its use. The point made against the sufficiency of the title of the act is that the creation of this commission is not referred to or in any way expressed thereby, and consequently the act must fall. The objection is not sound. The object of the statute was to provide for the use of voting machines in this state, presumably as an experiment, and the creation of the commission to inspect and determine the efficiency of machines to do the work contemplated is clearly germane and within the comprehensive scope of the title to the act. The provisions for the commission were in no proper sense foreign or dissimilar to the principal subject of the legislation, but, on the contrary, are appropriately adapted to it. Within our decisions the title is sufficient. Supervisors of Ramsey County v. Heenan, 2 Minn. 281 (330); State v. Cassidy, 22 Minn. 312, 21 Am. 765; State v. Board of Control, 85 Minn. 165, 88 N. W. 533.

See also Fleckten v. Lamberton, 69 Minn. 187, 72 N. W. 65. In that case it was contended that the act of the legislature of 1893, providing for the erection and construction of a new State Capitol (chapter 2, p. 6, Laws 1893), was unconstitutional for the reason, among others, that the subject-matter thereof was not sufficiently expressed in the title. The act was entitled "An act to provide a new Capitol for the state of Minnesota." Among its numerous provisions, was one creating a capitol commission, with power to purchase or condemn a site, select plans, and erect and construct a new state building. The court held that the provisions for this commission were not foreign to the subject of the act, as expressed in its title, and the statute was upheld. The creation of the commission in that statute, as in the statute here under consideration, was a mere detail of the legislation, and in no way disconnected with or impertinent to the subject-matter expressed in the title.

2. It is next contended that the statute contravenes section 6, article 7, of the constitution, which provides that all elections, except for certain town officers, shall be by ballot. This provision of our fundamental law was construed in Brisbin v. Cleary, 26 Minn. 107, 1 N. W. 825, to mean a mode of designating an elector's choice of a person for an office by the deposit of a ticket bearing the name of such person

in a receptacle provided for the purpose, ·in such a way as to secure to the elector the privilege of complete and inviolable secrecy in regard to the person voted for. "The privilege of secrecy," said the court, "may properly be regarded as the distinguishing feature of ballot voting." The voting machine is of recent origin and invention. It was neither known or thought of at the time of the adoption of the constitution. The framers thereof did not have in mind any such method of conducting elections. What they had in view, and intended to secure, was, as held in the Brisbin case, the privilege of the citizen to exercise his right of franchise in secret, as distinguished from the yea and nay method. Though the method of voting at the time the constitution was adopted was, and since has been, by printed ballots or tickets, the constitution should not be restrained to the strict sense in which, and with reference to which, its language was employed, if its main purpose may be otherwise fully attained. If, by any method substantially in accordance with its spirit, secret and effective exercise of the elective franchise may be accomplished, that method should not be held in violation of the fundamental law merely because not in accord with its letter.

Constitutions are not made for existing conditions only, nor in the view that the state of society will not advance or improve, but for future emergencies and conditions, and their terms and provisions are constantly expanded and enlarged by construction to meet the advancing and improving affairs of men. We cannot do better than to quote on this subject from Chief Justice Parker in Henshaw v. Foster, 26 Mass. 312, a case involving this immediate question. It appears from that case that the constitution of Massachusetts provided that elections should be by written ballots; that at an election held in that state certain electors tendered their printed ballots, which were rejected as not in conformity with the constitution. The court held that, though voting by printed ballots was unknown at the time of the adoption of the constitution (1780), that method came fairly within the scope of the law, and that the printed ballots were improperly rejected by the election officers. In the course of the opinion Justice Parker said: "We are to suppose that those who were delegated to the great business of distributing the powers which emanated from the sovereignty of the people, and to the establishment of rules for the

perpetual security of the rights of person and property, had the wisdom to adapt their language to future as well as existing emergencies, so that words competent to the then existing state of the community, and at the same time capable of being expanded to embrace more extensive relations, should not be restrained to their more obvious and immediate sense, if, consistently with the general object of the authors and the true principles of the compact, they can be extended to other relations and circumstances which an improved state of society may produce." The same question came up in the state of Maine in an early day, and a change from a written to a printed ballot was upheld. In Opinion of Judges, 7 Me. 495, it was said in that case that the framers of the constitution intended by the provision that elections should be by written ballots to exclude all other modes by which elections are often decided in popular assemblies, and that the word "ballot" was used in contradistinction to voting by ayes and nays or the uplifted hand. Other authorities are in line with this view of the law. Ex parte Arnold, 128 Mo. 256, 260, 30 S. W. 768, 1036, 33 L. R. A. 386, 49 Am. St. 557; Temple v. Mead, 4 Vt. 535; Williams v. Stein, 38 Ind. 89, 90, 10 Am. 97.

The statute under consideration provides that voting machines may be used and employed at elections, when so constructed and operated as to secure to every elector an opportunity to vote in secret, to permit him to vote once for all candidates of his choice, whether of the same or different political parties, and to prevent a person from voting for more than one candidate, unless lawfully entitled to vote for more than one, and shall record his vote as cast. We are not concerned with the question whether the machine involved in the case at bar, or any similar machine, is, or may be, so constructed and operated as to meet the requirements of the constitution respecting the right of secrecy, or whether it enables the elector to express his choice of candidates understandingly and with the assurance that his vote will be counted as cast. The machine is not before us, and we are not advised of its mechanism. We assume, for the purposes of the case, that by the use of the machine every elector may thereby fully and fairly exercise his constitutional rights in this respect. The only question presented in this connection is whether this method of voting conforms to the constitutional mandate that all elections shall be by ballot.

The precise question has been before the courts of our sister states. In Rhode Island, under a constitutional provision like our own, it was held that the legislature had the power to authorize the use of the McTammany voting machine, of the precise mechanism of which we are not informed, but presume that it is substantially like the one used in this election (In re Voting Machine, 19 R. I. 729, 36 Atl. 716, 36 L. R. A. 547; Opinion to the Governor, 23 R. I. 630, 50 Atl. 265); and by a divided court, in Massachusetts (Opinion of the Justices, 178 Mass. 605, 60 N. E. 129, 54 L. R. A. 430). By the supreme court of Michigan (City of Detroit v. Election Inspectors, 139 Mich. 548, 102 N. W. 1029, 69 L. R. A. 184) the question is discussed at some length, and pertinent authorities are there collected and commented upon; also by the supreme court of Illinois (Lynch v. Malley, 215 Ill. 574, 74 N. E. 723).

In view of the objects sought to be attained and secured by the framers of the constitution, it is unnecessary to consult the lexicographers for a definition of the word "ballot." It was not employed in its literal sense, but only for the purpose of designating a method of conducting elections which would insure secrecy and the integrity of the ballot. From the earliest days of popular elections, constant improvement is shown in the methods of conducting the same, to the end that there may be a free and honest expression of choice at the polls. Every step has been contested in the courts, only to be approved and upheld. The Australian ballot law, and the primary election for the nomination of candidates for office, on the whole a wise regulation of an important step in the selection of public servants, and designed to relieve in a measure party managers of the burdens heretofore cast upon or assumed by them respecting the management and results of political conventions, were both assailed as innovations upon constitutional rights, but have been sustained by the courts.

The voting machine at this date is an experiment, and, if capable of accomplishing what is claimed for it, will overcome in a striking degree many of the evils now said to surround the conduct of elections. If by the use of the machine the main purpose of the constitution can be effectuated, if the elector may cast his ballot in secret with the assurance that it will be counted as cast, there can be no sound reason why it should be dismissed as an innovation upon the letter of the law.

It is of no material consequence that each elector is not supplied with a separate ballot, so long as he may register his choice secretly, upon an official record, in the charge of and under the control of public officers, whose sworn duty it is to observe the requirements of the law respecting the conduct of the election, which includes the preservation and report of the result of the ballot. For these reasons we hold that the use of the voting machine does not violate the constitutional requirement that all elections shall be by ballot.

3. It is also contended that the statute is unconstitutional, in that it delegates judicial and legislative functions to the commission therein designated. We find no special force in this contention. The statute expressly provides for the use of the machines under the restriction that they will permit an elector to exercise his right of franchise in accordance with the constitutional guaranty. The only question left or delegated to the commission for determination is whether any machine submitted for use will permit the accomplishment of that end. This amounts to no more than a condition upon which depends the right to use the machine, and not a conditional taking effect of the statute itself.

It is well settled that the legislature may delegate the power to determine some fact or state of things upon which a statute makes, or intends to make, its own action depend. 8 Cyc. 830, and cases cited. The law on this subject is clearly and correctly summed up by Justice Mitchell in State v. Sullivan, 67 Minn. 379, 69 N. W. 1094, wherein the validity of chapter 229, p. 575, Laws 1895, providing for the establishment of municipal courts in certain cities, was involved. It was contended in that case that the statute there under consideration was unconstitutional, because it delegated legislative powers to the electors, in that it provided that the act should not go into effect except upon a four-fifths vote of the municipal council. In disposing of the question, Justice Mitchell said: "But it is equally well settled that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is, in its provisions, a complete statute in other respects when it leaves the legislature, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect, and becomes the law, by force of legislative action, as fully as if they had

unconditionally fixed the time when it should take effect." The statute there under consideration, unlike the one in the case at bar, did not go into effect until favorable action by the municipal council, yet the court held it valid legislation. The voting machine statute goes into effect by its own terms from and after its passage, it being left to the commission to determine whether a particular voting machine will meet its requirements.

The "boiler inspector act" (chapter 253, p. 406, Laws 1889), providing for the inspection of steam boilers, was sustained in State v. McMahon, 65 Minn. 453, 68 N. W. 77, against the contention that the provisions thereof which exempted from its operation boilers which had been inspected by certain insurance companies and certified to be safe were a delegation of legislative power. Other cases in this court are to the same effect. State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 Am. St. 681; State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782. This view of the question is upheld by other courts. A very similar case is Leeper v. State, 103 Tenn. 500, 53 S. W. 962, 48 L. R. A. 167. In that case, a "uniform text-book act" authorized the selection and adoption through a commission of a uniform series of text-books for the schools of the state. It was contended that the statute was unconstitutional, in that it delegated legislative power to the commission. The court held that it conferred executive or administrative functions only; that the act took effect from and after its passage, though details of administration of the act were, of necessity, put in the hands of a commission. See also In re Chapman, 166 U. S. 661, 17 Sup. Ct. 677, 41 L. Ed. 1154; Turner v. City, 104 Mich. 326, 62 N. W. 405; State v. Thompson, 160 Mo. 333, 60 S. W. 1077, 54 L. R. A. 950, 83 Am. St. 468; Haney v. Commissioners, 91 Ga. 770, 18 S. E. 28; Kansas City v. Ward, 134 Mo. 172, 35 S. W. 600; Com. v. Locke, 72 Pa. St. 491, 13 Am. 716.

Our conclusion upon this branch of the case is that the duties imposed upon the voting machine commission by the statute are administrative in character, and in no proper sense either legislative or judicial.

4. It is further contended by contestee that the voting machine in question was never approved or its use authorized by the commission.

Though the proceedings in this respect are somewhat indefinite, and perhaps irregular, we hold that sufficient authority was given by the commission to use the machine. At any rate, any irregularity in this respect should not result in disfranchising the electors. No fraud is charged, and, from aught that appears, the election was fairly and honestly conducted. Hankey v. Bowman, 82 Minn. 328, 84 N. W. 1002; State v. Bernier, 98 Minn. 1, 38 N. W. 369.

5. It is also contended that the court below erred in counting and refusing to count certain of the ballots cast at the election, and in the admission and exclusion of evidence in connection therewith. We find no error in this branch of the case sufficient to change the result reached by the trial court. A number of the ballots cast bore marks evidently placed thereon for the purpose of identification. The names of the electors were plainly written upon the face or back of the ballots, by which the identity of the voter was disclosed. The court below properly rejected all these ballots. Pennington v. Hare, 60 Minn. 146, 150, 62 N. W. 116. In one or two instances the elector wrote his name on the back of the ballot, and then completely erased it, so it could not serve as a mark of identification. These were properly counted by the trial court. There were other ballots upon which appeared capital letters, apparently the initials of the name of the elector, such as "W. K." and "W. S. F." These came within the statute prohibiting the identification of ballots, and were illegal. It may be stated as a general rule that where an elector places upon his ballot some mark, whether by writing thereon the initials of his name or otherwise, the result of which is to identify the ballot cast by him and to disclose for whom he voted, he violates the statute and destroys his vote. It is unnecessary that the mark be of such a character as to enable every person inspecting it to identify the voter. The purpose of the statute in prohibiting marks of identification is not wholly that of secrecy, but in part, perhaps mainly, to prevent the corruption of the voter, and to secure a free and untrammeled expression of the popular will. Any mark placed upon a ballot, therefore, by which the voter may be identified by any person, vitiates the ballot. The particular mark may be agreed upon by a corrupt elector with his corruptor, which might be wholly unintelligible to all other persons, yet the stat-

ute would be violated just as completely as though fully understood by all. Where such a mark appears upon a ballot, distinguishing it from others, the natural inference of which, and which the court can clearly say, is one of identification, the person who cast it cannot be heard to say that he did not intend to identify it. To permit explanations of this sort would open the door to gross frauds and corruption, which public policy and the law demand should be guarded against.

In the case at bar, two electors indorsed the initials of their names upon the ballots cast by them immediately under the names of the judges of election. On the trial they were called as witnesses and testified that they had no intention of identifying their ballots, but understood the judges of election to direct them to indorse their initials thereon. In this particular case the explanation may be true. It undoubtedly is. But if the statutes are to be enforced, and the purpose thereof effectuated, explanations of this kind must be excluded. The initials upon the back of these ballots were clearly in violation of the statute and the court properly excluded them.

One of the contested ballots, which the trial court counted, had opposite the name of one of the candidates for mayor the word "nit." Upon another were written, after the names of the candidates for alderman, the words, "May the best man win." It is clearly apparent that these ballots were not so labeled for the purpose of identification, and they were properly counted, within the rule of Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500.

A number of other ballots were challenged by the respective parties, to which we deem it unnecessary to refer. Except in one or two instances, the rulings of the trial court were correct. Errors in this respect were on both sides, and neutralized each other.

Our conclusion is that of the legal votes cast at the election in question, contestant received a majority of two, instead of one, as found by the trial court; and he was therefore the regular nominee for the office of senator.

The action of the court below is affirmed.