MARTIN I. LANNON v. JOSEPH RING.[1]

April 23, 1909.

Nos. 16,081—(146).[2]

**Poll List—Evidence.**

The poll list, a record of the names of voters made by election officers during the progress of the election as they appear and cast their ballots, is, in the absence of clear proof to the contrary, conclusive of the names and number of persons who voted.

**Loose Ballot.**

A ballot found in the ballot box by referees appointed in contest proceedings to recount the ballots cast at a particular precinct, which was not attached to the string of ballots counted by the officers of the election, and which, if counted, exceeded the number of ballots cast as shown by the poll list, held, in view of the facts stated in the opinion, not sufficiently identified as a lawfully cast ballot.

**Ballot—Erasure—New Marks.**

A voter appears to have properly marked his ballot for contestant, and then attempted to obliterate the same by means of other pencil marks or scratches, concluding his efforts by placing a proper mark after the name of contestee. Held properly counted for contestee, under subdivision 8, § 302, R. L. 1905.

**Marks of Identification.**

Similar marks and erasures opposite the names of other candidates held not marks of identification.

[1] Reported in 120 N. W. 1082.      [2] April, 1909, term calendar.

Proceeding in the district court for Scott county to contest the election of Joseph Ring to the office of county commissioner of the Fifth commissioner district for that county, instituted by one Martin I. Lannon. The matter was heard before Morrison, J., who made findings and as conclusion of law found that both candidates received an equal number of votes for the office of county commissioner, by reason of which there was a tie and the title to the office was to be determined by lot in the office of the county auditor as provided by section 422, R. L. 1905. From an order denying the motion of contestee, Joseph Ring, to amend the findings of fact and conclusions of law or for new trial, he appealed. Reversed and new trial granted.

*F. J. Leonard,* for appellant.

*Julius A. Coller* and *E. Southworth,* for respondent.

BROWN, J.

Contestant and contestee were rival candidates at the late general election for the office of county commissioner of the Fifth commissioner district of Scott county. The official count of the ballots cast for each disclosed a majority of three for contestee, and he was duly declared elected. Whereupon this contest was instituted, in and by which the official count in one of the election districts, the town of Newmarket, was challenged. Issue was joined, and the matter came on for trial before the court below, at the conclusion of which the court found that each candidate had received an equal number of votes, and it was ordered that the title to the office be determined by lot, as prescribed by section 422, R. L. 1905. Contestee thereafter moved for a new trial, and appealed from an order denying it.

Appellant's assignments of error present for consideration the correctness of the rulings of the trial court in counting a disputed ballot for contestant and refusing to count two disputed ballots for contestee. Respondent, contestant, challenges the correctness of a ruling of the court in counting a disputed ballot for appellant, contestee; but this ruling is not properly before the court, for contestant took no appeal from the decision of the court below. The question raised will, however, be considered, for a decision thereof will in all probability end the contest.

In view of the result necessarily following our conclusion respecting two of the contested ballots, viz., the one counted for contestee, Ex-

hibit E, challenged by respondent as just stated, and that counted for contestant, Exhibit B, it becomes unnecessary to consider Exhibits C and D, which contestee contends should have been counted for him. We are not agreed upon the question whether those ballots were valid under the statutes; and, it being unnecessary to determine the question, we pass it without further remark.

We come, then, directly to Exhibit B, counted for respondent, and which contestee insists was error. After the commencement of the contest the court below appointed referees to examine and recount the ballots cast in this particular precinct. They found the ballot box in proper condition, and opened and removed therefrom the ballots which had been strung together by the officers of the election at the time of the official count, and immediately discovered an extra ballot at the bottom of the box, which had not theretofore been counted and was not attached to those previously canvassed. This was an official ballot, and was marked with an X opposite the name of contestant, and was properly counted for him, if duly cast by an elector. We are of opinion that the court erred in counting this ballot. Its integrity as a lawfully cast ballot, under the evidence is too doubtful to extend to it a place among those rightfully cast. The facts as disclosed by the record, are as follows:

According to the poll list, a record of the names of the electors made up by the clerk of the election as they appeared at the polls to vote, there were 286 votes cast, and that number of ballots was canvassed, counted, and preserved by the election officers. As canvassed they were strung together, and at the conclusion placed in the ballot box, which was then sealed and locked, as required by law. Just how this extra ballot came in the box is not made clear by the evidence. At the close of the polls one of the judges removed the cover from the ballot box and took therefrom all the ballots contained therein. He placed his hand in the box, after he supposed he had removed all of them, and "felt around" for more, but found none. The associate judge, for the purpose of making certain that all the ballots had been removed, placed his hand in the box in search of ballots. He found none, and he then took the box, turned it bottom side up, and shook it, and he testified on the trial that he was confident that no ballot was left therein. The officers then proceeded with the count, leaving the un-

covered box on the floor, at one end of the table on which they were at work, and where lay the unused block of official ballots. The canvass was completed at seven o'clock the following morning, when the counted ballots, as already stated, were returned to the box, attached together as required by law. During the canvass of the ballots bystanders were permitted to remain in the room; but there is no direct evidence that the ballot in question was clandestinely marked and placed in the box at some time during the night.

The fact that the number of ballots counted corresponds with the number of names on the poll list made as the election progressed, the care taken by the officers to remove from the box all ballots therein, and the opportunity afforded some mischievous or corrupt bystander to prepare this particular ballot and place it in the box unbeknown to the officers, so cloud the honesty of the ballot as to require it to be rejected. It is a significant fact that, when found in the box by the referees, the ballot was not folded as ballots are usually when deposited in the box from the hands of the voter, but lay flat on the bottom of the box. It bore evidence of having been folded at some time, but when found by the referees it was not in that condition. The record furnishes no suggestion of fraud nor incompetence on the part of the judges and clerks, although they may have neglected some of the details pertaining to their duties. On the whole, the election was conducted honestly and in substantial compliance with the statutes. In view of these facts, we are of the opinion that the presumption that election officers do their full duty and that their returns are conclusive, in the absence of clear proof to the contrary, is not sufficiently overcome by the evidence to give validity to this particular ballot. Though the poll list was not kept in all respects as required by law, there was no attempt to show error or mistake in recording the names of the voters as they appeared and cast their ballots.

It follows that the court erred in counting this ballot for contestant, and there must be a new trial, in view of which we deem it proper to say, inasmuch as the decision will probably end the contest, that Exhibit E was properly counted for contestee. As heretofore stated, this question is not strictly before the court; but it was argued by counsel for respondent, and, for the reason stated, we determine it. The voter casting that ballot seems to have made the proper mark opposite the

name of several candidates, and then attempted to obliterate them by means of other pencil marks or scratches, after which he placed a proper mark opposite the name of another candidate for the same office. Such was the condition of the ballot following the name of the contestant and contestee. The mark opposite contestant's name had been erased in the manner stated, and the proper mark placed opposite the name of contestee. We think the court properly counted this ballot for contestee. It comes within the scope and purpose of subdivision 8, § 302, R. L. 1905, which provides that "when a ballot shows that marks have been made against the names of two candidates, and an attempt made to erase one of such marks, it shall be counted for the candidate for whom it was evidently intended." The evident intention of the voter of this ballot was to cast it for contestee, and of this we have no serious doubt. Nor do we concur in the contention of contestant that the erasures were intended as marks of identification.

For the reasons stated, this disposes of all questions requiring consideration, and the order appealed from is reversed, and a new trial granted.