PAUL DOEPKE v. A. E. KING.[1]

February 4, 1916.

Nos. 19,681—(265).

**Election—writing voter's name on ballot.**

1. Where a person so far violates the secrecy of an election as to identify his ballot, by writing his name on it, the act is in violation of the law and the vote is illegal; ballots cast in violation of the law should be excluded whether cast by an illegal voter, by one who exhibited his ballot before casting it, or by persons who wrote their names on their ballots. "It is not the voter's private intention, but the natural inference from what he has done, which controls." Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947.

**Election—identification of ballot.**

2. It is not necessary, to make a ballot identifiable, that a voter write his own name or initials thereon—the object may be attained just as easily by writing thereon the name of another person or by writing thereon a wholly fictitious name. Various ballots involved in this contest examined and considered.

**Intoxicating liquor—county option vote.**

3. The conclusion reached is that 3,794 legal votes were cast at the election, of which the proposition to prohibit the sale of intoxicating liquor received 1,899, a majority.

[1] Reported in 156 N. W. 125.

Paul Doepke appealed from the decision of the county canvassing board upon the ballots cast at a special election held on June 7, 1915, in Redwood county on the question whether the sale of intoxicating liquor should be prohibited. The appeal was heard before Olsen, J., who denied the motion of contestee, A. E. King, to dismiss the appeal on the ground that the court was without jurisdiction, made findings and ordered judgment against the contestant. From the judgment entered pursuant to the order for judgment, Paul Doepke appealed. Affirmed.

*Pfaender & Flor* and *Davis & Michel,* for appellant.

*Albert H. Enerson,* County Attorney, and *Frank Clague,* for respondent.

SCHALLER, J.

An election was held in Redwood county on June 7, 1915, under, the provisions of chapter 23, p. 24, Laws of 1915, the county option law. The county canvassing board reported that the proposition to prohibit the sale of intoxicating liquors in that county had been adopted by a majority of ten votes. From this decision an appeal was taken to the district court, which after a full hearing made findings and ordered judgment for the contestee, from which contestant appeals.

The trial court found that 3,796 lawful ballots had been cast at the election, 1,899 of which were in favor of, and 1,889 against, the proposition; that one ballot was blank and that seven were unintelligible. It further found that seven illegal ballots had been cast, one by a person who was not a legal voter, one by a legal voter who had unlawfully allowed another person to mark and see his ballot, and five by voters who wrote their names on the ballots and thereby disclosed how they voted. These seven ballots were not counted for any purpose.

Many questions raised by the assignments of error have been disposed of in the opinion in the case of *Eikmeier v. Steffen,* 131 Minn. 287, 155 N. W. 92. They need not be discussed here. The principal question presented on this appeal is whether in making up the total vote cast at the election, ballots cast by persons who wrote their names on them and thereby disclosed their votes, should be included. No error is assigned as to the ballot cast by the person who was not a legal voter

or as to that cast by the person who unlawfully disclosed his ballot before he deposited it in the ballot box.

1. Where a person so far violates the secrecy of an election as to identify his ballot, by writing his name on it, the vote itself is illegal and fraudulent. An act of this kind is in violation of the law and should not be given validity for any purpose whatsoever. Pennington v. Hare, 60 Minn. 146, 62 N. W. 116; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A. (N. S.) 621, 9 Ann. Cas. 270; Bloedel v. Cromwell, 104 Minn. 487, 16 N. W. 947. This court has already foreshadowed this holding in the Eikmeier case [131 Minn. 296], where it is said that: "It is clear that ballots cast by persons not qualified to vote cannot be considered as votes cast at the election. It is also probable that a voter who, in violation of the law, intentionally marks his ballot for the purpose of identification, and thereby, by his own wrongful act, makes his ballot void, should not be considered as having voted at such election."

The trial court, therefore, correctly excluded from the total the ballots cast in violation of the law, whether cast by an illegal voter, or by one who exhibited his ballot before it was cast, or by persons who wrote their names on their ballots, thus making them easily identifiable. Such ballots are void and must be excluded, whether the voter acted wilfully, ignorantly or innocently. "It is not the voter's private intention, but the natural inference from what he has done, which controls." Bloedel v. Cromwell, supra.

2. The respondent, under the authority of Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758, also assigns error and insists that the court erred in counting certain other ballots. We have had no difficulty in coming to the conclusion that, with very few exceptions, the count made by the court was correct. We shall consider only those ballots which are seemingly doubtful and those as to which we have come to a conclusion different from that reached by the trial court.

Error is assigned by the contestant that the court erred in counting Exhibit "A 11" in the affirmative. Contestees contend that the court erred in counting Exhibit "X" in the negative, and in including both "A 11" and "X" in the total vote.

Exhibit "A11" is a ballot in the affirmative, but on the back thereof is written the name "Tom Bramner." It was shown that there was no person of that name in the precinct in which the vote was cast, but it is not necessary, to make a ballot identifiable, that a person write his own name or initials thereon—the object may be attained just as easily by writing thereon the name of another person or by writing thereon a wholly fictitious name. Elwell v. Comstock, supra.

Exhibit "X" was counted in the negative. On the back and immediately following the initials of the judges was written the word "tiffany" and under that the word "hillman." This rendered the ballot conspicuously identifiable, as was Exhibit "A 11." Both of these ballots must be excluded for all purposes. The total number of legal votes cast at the election must be reduced by 2, making 3,794 legal votes cast at the election, instead of 3,796, as found by the trial court. Exhibit "A 11," which was counted in the affirmative, must be deducted from the total affirmative vote, thus leaving 1,898 affirmative votes, instead of 1,899, as found by the trial court.

Exhibit "A35", which was counted "blank" by the trial court, should be counted "yes." The X mark is very plain and clear in the space immediately to the right of the word "yes." A pencil mark, starting to the left of the word "yes," crosses the upper part of it and extends through the X mark in the square to the right. We are satisfied that the voter who deposited this ballot intended to vote "yes."

Exhibits "A", "A3" and "A19" were correctly counted in the affirmative. Exhibit "A" has a V mark in the proper square to the right of the word "yes." Exhibit "A3" has a mark consisting of two lines (//) in the square to the right of the word "yes," and Exhibit "A19" has an arrow mark in the square opposite the word "yes." No other marks are found on any of these ballots.

Exhibits "A2," "D" and "A31" are claimed to be identifiable ballots. "A2" has the word "dry" written on its face. "D" has the word "wet" written on the back. The "dry" ballot is in the affirmative; the "wet" ballot is in the negative. The court held them to be valid. We do not think that the holding is erroneous. Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113,

698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270; Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500.

Exhibit "A31" is clearly a valid ballot. It is charged that it is void because on the back thereof, near the lower right-hand corner, are two pencil marks which make the ballot identifiable. We have examined these so-called identification marks. The lines are very faint. It requires a strong magnifying glass to determine whether they are pencil marks or flaws in the paper.

Exhibit "A25" has the X mark to the right of the square after the word "yes." It is an affirmative vote. Schultz v. Shelp, 131 Minn. 303, 155 N. W. 97; Truelsen v. Hugo, supra.

Exhibit "K" has the X mark immediately over the word "yes." It was held to be a vote in the affirmative. The conditions are similar to those in Truelsen v. Hugo, supra, where it is said: "Exhibits 24, 52 and 78, counted for Hugo, are objected to because the cross is placed above the line extending across the ballot over the name of contestee. 'Contestant's' (evidently a mistake—the word 'contestee' was meant to be used) name is first on the ballot, and above it are no names of candidates or blank spaces. Just above his name is a line across the ballot, and the marks on these three ballots appear just over this line, and above or near the square opposite contestee's name. It is clear that they should be counted for Hugo. There was an attempt to comply with the statute, and the voter intended to vote for him."

This is as far as it is necessary to go in considering the ballots returned for examination. The contestee must, to succeed, have a majority of the legal votes cast at the election, blank and unintelligible ballots included. It will, therefore, serve no useful purpose to consider the objections made to certain votes counted in the negative by the trial court.

3. The result of our examination is that there were cast at the election in Redwood county at the special election, 3,794 legal votes, of which the proposition to prohibit the sale of intoxicating liquor received 1,899, a clear majority.

Judgment affirmed.