CHARLES R. PYE v. FRANCIS J. HANZEL.[1]

May 28, 1937.

No. 31,317.

---

[1]Reported in 273 N. W. 611.

*Charles R. Pye, William W. Pye, Frank E. Dougherty,* and *John W. Flynn,* for contestant-appellant.

*Gallagher & Madden* and *Kopple Hallock,* for contestee-respondent.

PETERSON, JUSTICE.

Contestant appeals from an order denying his motion for a new trial after findings of fact and conclusions of law deciding an election contest in favor of the contestee. Contestant and contestee were the only nominees and candidates for the office of judge of probate court of Rice county at the general election held on November 3, 1936. The total number of ballots cast was 12,821, of which 826 were cast in blank for judge of probate and hence could not be and were not counted for either of the parties hereto. This includes exhibit 22, which was not counted at all by the court below. Reference will be made to this ballot later. The court below found that 27 ballots were cast in such a manner that they should not be counted for either of the parties, and that after deducting the ballots cast in blank and those cast in such a manner as not to be counted there remained to be counted 11,968 ballots, of which the court found there were 5,986 cast in favor of the contestee and 5,982 cast in favor of the contestant, and thereupon the court found and decided that the contestee was duly and legally elected judge of probate for the term beginning the first Monday in January, 1937. Contestant on this appeal claims that of the 27 ballots rejected 20 were erroneously rejected as to him and that other ballots were erroneously counted in favor of the contestee.

■ Our inquiry is to ascertain whether the evidence reasonably sustains the findings of the court below. It is peculiarly the province of the trial court to draw reasonable inferences from the evidence before it, even though such evidence may consist of ballots and other written evidence, and the findings and conclusions drawn by the court below must be sustained if they are such that

reasonable minds might draw such inferences and make such findings. The rule governing cases of this kind was very aptly stated by Mr. Justice Olsen in McVeigh v. Spang, 178 Minn. 578, 585, 228 N. W. 155, 157:

"The ballots being written documents and present in evidence here, this court is in as good a position to construe them as was the trial court. We are nevertheless governed by the rule that if the evidence reasonably sustains the findings of the trial court the findings control. The derivative rule is that it is the province of the trial court to draw reasonable inferences from the evidence before it, and that if the inferences drawn by the trial court are such as reasonable minds might properly draw from the evidence its findings therefrom are sufficiently sustained."

■ It is claimed that certain ballots cast for the contestant were erroneously rejected upon the ground that they have identification marks upon them and hence were illegally cast. Elections are governed by statutes. The general principle underlying these statutes is that every voter should have the opportunity to vote and have his vote counted as cast. In order to insure this right, the Australian ballot system has been adopted, which provides that the ballot be and remain secret. To accomplish this purpose, the statute provides that a uniform and indistinguishable mark be used by the voter to indicate his choice. By 1 Mason Minn. St. 1927, § 424(2), the voter is required to mark his vote by an "X" mark, but if the "X" mark is not used the ballot may be counted if the voter uses uniformly a mark other than the "X" in marking his ballot. Ibid. § 454(7). The intent of the voter must be shown and indicated as required by the statute. If there has been substantial compliance with the statute, the ballot will be counted, otherwise not. Judges of election and courts are to ascertain the intention of the voter by following the rules prescribed by law. Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270.

(a) Two of the ballots which were rejected have cross marks on the back of them over the word "judge," exhibits 1 and 52.

These marks were correctly held to identify the ballots and were rejected upon the authority of McVeigh v. Spang; 178 Minn. 578, 228 N. W. 155. The cited case fully sustains the ruling of the court below. Each of the ballots is from a different precinct. In McVeigh v. Spang this court said [178 Minn. 583]: "A mark placed upon the back of the ballot in the space provided for the initials of the election judges is more of an identification mark than if placed on the face of the ballot." The ballots were properly rejected. Pennington v. Hare, 60 Minn. 146, 62 N. W. 116; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A. (N.S.) 621, 9 Ann. Cas. 270.

(b) Ballots, exhibits 5, 30, and 48, have the names of the voters in the precincts in which they were cast written on the back. Because of this fact these ballots could be identified and therefore they cannot be counted. Pennington v. Hare, 60 Minn. 146, 62 N. W. 116; Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A. (N.S.) 621, 9 Ann. Cas. 270; Frajola v. Zanna, 193 Minn. 48, 257 N. W. 660. In Elwell v. Comstock, at p. 270, this court held that the placing of initials on a ballot comes within the statute prohibiting the identification of ballots and renders the ballot illegal. It was held that it was unnecessary that the mark be of such a character as to enable every person inspecting it to identify the voter, and that the purpose of the statute in prohibiting marks of identification is not only that of secrecy, but in part, perhaps mainly, to prevent the corruption of voters and to secure a free and untrammeled expression of public will. In that case it is stated: "Any mark placed upon a ballot, therefore, by which the voter may be identified by any person, vitiates the ballot."

(c) Exhibit 24 is a rejected ballot upon which the voter put a cross mark opposite the name of the two candidates for congress, drew a circle around the two marks, and wrote the words "No good." For representative in the legislature, he put a cross mark opposite one of the candidates and a cross mark opposite the blank and a circle around the two marks. For clerk of court, he put a cross mark opposite the candidate's name and a cross mark op-

posite the blank and put a small circle around the two. This ballot was held to be marked in such a way as to be identified and therefore uncountable. The ruling was correct. Truelsen v. Hugo and Elwell v. Comstock, *supra;* Doepke v. King, 132 Minn. 290, 156 N. W. 125. This ballot is not rejected because the words "No good" are written on it. This, standing alone, would probably not be grounds for rejecting the ballot. In the Frajola case, writing the words "Skver Deall O. K.," and on another ballot the phrase "10 yrs," and in the Truelsen case the writing of a vulgar expression were held not to be grounds for rejecting them; but in this case, in addition to the objectionable features found in the cited cases, there are three large circles, each enclosing two "X" marks, with the words "No good" marked next to the circle. The circles and the "X" marks clearly serve to identify the ballot within the rule laid down in Truelsen v. Hugo, Elwell v. Comstock, and Mc-Veigh v. Spang, *supra.* Writing words such as "square deal," "No good," "O. K.," and abusive epithets serve to identify a ballot the same as other identifying marks and should be ground for rejecting the ballot. Justices Lewis and Calvin L. Brown were of the same opinion in Truelsen v. Hugo, *supra.* Our cases seem to have settled the rule otherwise.

(d) Ballot, exhibit 34, has a mark in the square opposite the candidate's name and an additional "X" mark to the left of the square on the inner part of the ballot. There is no such additional mark opposite the name of any candidate otherwise voted for on the ballot. It was held that this additional mark serves as an identifying mark and is ground for rejecting the ballot. This ruling is sustained by the authorities *supra;* Bloedel v. Cromwell, *supra.*

(e) Ballot, exhibit 37, has a cross in the regular square opposite the candidate's name consisting of a number of cross marks making one large cross mark, which the court below said was "about 20 times as wide as an ordinary cross mark and in a smudged condition." All the other cross marks on the ballot are in regular form. By reason of the cross mark opposite contestant's name, the ballot can be readily identified, and the court rejected

the ballot for this reason, upon the authority of the decisions of this court cited *supra*. In this the court was correct.

(f) Ballots, exhibits 44-3 and 44-4, were rejected because they have identifying figures on the back of them. The number 62 is written on the back of 44-3 and the number 37, underlined, on the back of 44-4. It appears to have been the practice of some of the election officials to number the ballots and of others not to do so. These two ballots came from a precinct in the second ward in the city of Northfield, in which the ballots had not been numbered by the officials. The ballots could therefore be readily identified, and the court below held that the numbers were identifying figures for which the ballots should be rejected. The court in rejecting these ballots correctly applied the rule of Elwell v. Comstock and the other cases cited *supra*.

(g) Ballots, exhibits 47-1 and 47-2, have proper cross marks opposite the candidates' names, but in addition have check marks in each instance to the left and opposite the cross marks. Ballot 47-1, although not so found by the court below, had also a cross mark opposite the blank for judge of probate which is badly marked up but which served as a further mark of identification of the particular ballot. The court below rejected these ballots by reason of the provisions of § 454(7), which requires that the voter must use one uniform mark in marking his ballot. He may use a cross mark, or he may use a check or some other mark to indicate his intention. He cannot use more than one kind of mark, and if he does his ballot must be rejected by reason of the plain language of the statute. McVeigh v. Spang, *supra*.

■ Seven ballots, exhibits 4½, 26, 27, 32, 43, 45, and 50, were rejected upon the grounds that they were cast in blank. The blank space for judge of probate appears immediately under contestant's name. Contestant claims these ballots under the rule laid down in McVeigh v. Spang, construing § 454(3), that a vote shall be counted even though the cross mark is out of its proper place but on or so near a name or space as to indicate *clearly* that the voter intended to mark such name. McVeigh v. Spang is not in point because in that case none of the voting marks for any candidates were cor-

rectly placed. It involved a case of the uniform misplacement of the check marks used in voting. In the instant case the votes on all of the ballots, except exhibit 26, were correctly placed for all other candidates. On ballot 26 some of the vote marks were correctly placed as to some of the other candidates. The rule of the cited case applies only in cases in which the voter has uniformly misplaced all of his vote marks. In the McVeigh case the distinction is stated [178 Minn. 587]:

"A ballot in one precinct, contestee's exhibit 32, contains voting X marks in four squares, or partly in such squares, after the blank spaces below the names of candidates for four different offices, and no other marks. This ballot was counted for contestee because the mark in the bracket where his name appeared was nearest his name, and the court inferred the voter intended these marks as voting marks and by some inadvertence placed the mark in the square below instead of opposite the name of each candidate. It is quite generally held that a cross mark in a square opposite a blank space, nothing else appearing, is not a vote for any candidate. Nelson v. McBride, 117 Minn. 387, 135 N. W. 1002; Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758. There are distinctions between the ballots here in question and the ones considered in those two cases. It does not appear in those cases that the ballots there considered were marked uniformly in or partly in blank spaces. It is apparent that if a voter correctly marks his ballot in the proper square opposite the names of candidates as to a number of offices, and then in the bracket containing the names of candidates for one particular office he marks opposite the blank space provided for writing in the name of some candidate not on the ballot, it cannot then be readily ascertained that he intended to vote for anyone for that office. Here there were no such correct markings. It does not seem probable that a voter would go through the ceremony of voting and make cross marks in four squares on his ballot without intending to vote for any one, or that he intended to show disapproval of all candidates for four different offices, or that he intended to write in names not on the ballot in four places but forgot or neglected to do so in any place. Again, the ballot

shows that in two of the places, but not in the bracket where contestee's name appears, one or both of the upper arms of the cross mark extend up into the square opposite the name of the candidate. As to those candidates there would be no very serious doubt of the validity of the ballot. But if the intention in two cases was to vote for the candidate whose name appears next above, there is no good reason for holding that the same intention was not had in the other two. Under G. S. 1923 (1 Mason, 1927) § 454(3), and the liberal rules followed by this court in determining the intention of the voter in cases of misplaced marks, the finding of the court that this ballot was a vote for contestee is sustained."

An examination of the ballots themselves discloses that the cross marks in every instance were placed in the center of the square opposite the blank for judge of probate and down so as not to touch the upper line or suggest that an attempt was made to vote for the candidate named in the space above. Nelson v. McBride, 117 Minn. 387, 135 N. W. 1002; Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758. McVeigh v. Spang but confirms the rule that applies to situations of this kind.

■ Ballot, exhibit 41, was rejected as a vote for contestant by the court below with some hesitation upon the grounds that it was not marked. Section 424 provides that ballots shall be marked with an indelible pencil furnished for the purpose. There is no pencil mark on the ballot in question. There is a faint indication of a cross mark opposite the name of contestant in the square after his name. This mark was not made on this ballot with a pencil and evidently was made on some other piece of paper, which left an impression on this ballot from the pressure exerted on the paper on which the pencil mark was actually made. An examination of the ballot shows that the court was correct. The statute provides that the intention of the voter must be ascertained from the ballot itself. § 454. If the voter has failed to mark his ballot in the manner required by law he has failed to express an intention, and the vote cannot be counted.

■ It is urged that the court below erred in counting four ballots, exhibits M, D-1, W, and No. 2 of U, for contestee. It is claimed that

144

these should have been rejected upon the grounds that the cross marks are so irregular and imperfect as not to comply with the statute. The cross marks are irregular and imperfect. The cross marks on exhibits M, D-1, and W have a somewhat peculiar loop around them. The cross mark on No. 2 of U has a diagonal line and two lines across it to constitute a cross mark. While this is an irregular and imperfect cross mark, it is clear from the ballot that it was intended only to express the voter's choice, and therefore the ballot should be counted under § 454(6). In Pennington v. Hare, 60 Minn. 149, 62 N. W. 116, it is said:

"The statute does not, however, prescribe any inflexible rule as to what shall or shall not be accepted as a cross mark, and any mark, however crude and imperfect in form, if it is apparent that it was honestly intended as a cross mark, and for nothing else, must be given effect as such." To the same effect, Hughes v. Upson, 84 Minn. 85, 89, 86 N. W. 782.

■ Finally, it is contended that the court erred in counting three identified ballots for contestee, exhibits B, J-1, and Z. The court below found that the marks were not put on these ballots as identification marks. On exhibit B there is a dim figure 5 on the face of the ballot beside the cross mark after the name of Chester Watson as candidate for congress. This ballot should have been rejected upon the rule of Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947. We fail to see why the number 5 is not an identifying mark on this ballot. Exhibit J-1 has cross marks to the left of the name of the candidates for whom the voter voted. The cross marks on the left of the names of the candidates were scratched out. This clearly indicates that the voter thought he had voted erroneously and attempted to correct his ballot by placing the crosses where they properly belonged. The crossing out of the crosses erroneously placed amounts to an erasure, and the ballot should be counted. Section 454(8) ; Lannon v. Ring, 107 Minn. 453, 120 N. W. 1082. This ballot was properly counted for contestee. Exhibit Z has the number 460 on it in blue pencil. The writing is the same as that used in writing the signature of the judge of election just above it.

But it appears that every ballot in the precinct was numbered by the judges of election, and consequently the number in question was not an identification. This is settled by Nelson v. Bullard, 155 Minn. 419, 194 N. W. 308.

■ The contestee urges that other facts support the decision. He is entitled to assert them. Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758.

(a) Contestee claims that ballot, exhibit 28-3, cast and counted for contestant, has written in the blank space for judge of probate the name of contestant with a line drawn through it. The "X" mark to indicate a vote for contestant was placed in a regular square for that purpose. The writing of contestant's name and drawing a line through it in the manner indicated plainly identifies it, and the ballot should have been rejected. Bloedel v. Cromwell, Doepke v. King, *supra*. The court below rejected ballots for contestee containing similar identification marks, for example, exhibit B-1, marked CXC on the front and on the back.

Ballot, exhibit 20, cast and counted in favor of the contestant, has a check mark on it opposite the name of Albers, a candidate for representative in the state legislature. This mark certainly identifies the ballot, and the ballot should have been rejected. It is in the same category as exhibit B and should be rejected for the same reasons.

(b) The court below found that exhibits G-1 and H-1, cast for contestee, were practically identical with exhibits 47-1 and 47-2, *supra*. We have examined the ballots, and they substantiate the finding. The ballots are identical, and either all should have been counted or all rejected. The court rejected all four ballots. The ruling was correct. No prejudice could result thereby to either party.

(c) Contestee calls attention to the fact that exhibit F-F should have been counted in his favor if exhibits 4½, 26, 27, 32, 43, 45, and 50 are to be counted for contestant. It is clear that all of these ballots should be rejected for the reasons given in subdivision 2 of the opinion.

(d) Exhibit I-1 contains a faint impression on it opposite the name of contestee. Contestee's claim is that if ballot 41 is to be counted for contestant, I-1 is to be counted for him. It is in all respects identical with exhibit 41, referred to in subdivision 4 of the opinion. The court below properly rejected both ballots. Contestant lost one and contestee lost one vote by the ruling of the court below.

(e) Contestee challenges three ballots with irregular and imperfect crosses, exhibits 25, 36, and 46-2, which were counted in favor of the contestant, and claims that another one, exhibit 22, which was rejected, should have been counted in his favor. Exhibit 46-2 is identical with exhibit No. 2 of U, of which contestant complains. The ruling upon the four ballots referred to by the contestee offset the ruling complained of by the contestant with respect to exhibits M, D-1, W, and No. 2 of U.

(f) Ballots cast in favor of the contestant with slightly burned corners, with small pieces torn from the corners, and with ink and smudge marks on the back of them are claimed by contestee to be so identified by reason of the facts stated that they should be rejected. The court below found that these marks did not constitute identification marks, and, while the evidence is not clear, the finding must be sustained upon the authority of McVeigh v. Spang, *supra*.

(g) Contestee also claims that the court below erroneously rejected the ballot of one Blass, which was cast in favor of contestee. It appeared that a few days before election Blass commenced to move from the precinct in which the vote was cast into another precinct. He had not completed the moving, but he had moved some of his furniture and his bed out of the precinct into the house which he had rented. He slept in this house two nights before the election. He voted in the precinct in which he had been living. He testified that he regarded the latter place as his place of residence and the place in which he was entitled to vote because he had not completed moving and still received his mail at that place. The fact that stands out is that the voter had not completed his moving from the old residence to the new one. In short, he had failed

to acquire the new residence. Section 368(9) provides that the "mere intention to acquire a new residence, without the fact of removal, shall avail nothing; neither shall the fact of removal without the intention." In this case there was a partial removal only, with intention to retain the old residence until the new one was acquired. Therefore, Blass's residence was at the place from which he was removing, and he was entitled to vote there. His vote was erroneously rejected.

We have considered the other points raised by the parties but do not find them of sufficient importance to merit discussion. A reading of the record and of the decision of the court below impresses us that the case was fairly tried and that the court determined each point by first determining the facts as the evidence required and then applying the rules to them which this court has laid down in the numerous decisions to which we have referred *supra*. It is apparent that the rules were applied evenhanded to both parties, and that where the contestee appeared to have had a favorable ruling a similar ruling was made in favor of the contestant. The findings of fact, except as herein indicated, are supported by the evidence, and the conclusions of law are in accordance with the rules which this court has determined are applicable to the facts found by the court below in this case.

Affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.